[Andrews v. The State.]

# Andrews *v.* The State.

## *Murder.*

(Decided July 13, 1907. 44 South. 696.)

1. *Homicide; Service of Copy of Indictment; Defects.*—A variance between the indictment and the copy served on the defendant consisting in the word, "whos" for "whose" and "shooling" for "shooting," if not self correcting is not ground for quashing the venire; and where the original indictment and the copy served on the defendant is not sent to this court the action of the trial court in passing upon the question of whether the copy is a correct copy of the original, is not reviewable.

2. *Jury; Disqualification; Murder Trial.*—The fact that a person has served on a jury during the previous week of court does not disqualify such person from inclusion in the special venire drawn to try a capital felon, under the express provisions of section 4988, Code 1896.

3. *Same; Peremptory Challenge; Time for Taking.*—After a juror has been accepted by both parties he may not be peremptorily challenged unless special reasons are shown for departure from the regular order.

4. *Homicide; Evidence; Admissibility.*—Evidence as to the condition of the body of decedent's husband, the position and condition of his knife etc., in the light of facts that threats had been made by him, was competent as tending to show whether he could have done the killing; but evidence that decedent had her baby in her arms on a premious occasion when her husband, and not the defendant, had offered violence to her, and that he had been bound and tied after the arrest, was incompetent.

5. *Same; Evidence; Hearsay Testimony.*—Testimony as to what decedent had said about her husband attempting to kill her, and not the defendant, was hearsay and properly excluded.

6. *Same; Lost Instrument; Proof.*—Proof of the contents of a telegram was admissible where it was shown by the operator that he took down the message from defendant and had it on a former trial where it was introduced in evidence; that it went out with the jury, and that the clerk had not seen it since, although he had searched the jury room and the papers in the file in the case, and had been unable to find it.

7. *Homicide; Evidence; Admissibility.*—Testimony as to a draft drawn by decedent's husband, who was not the defendant, and as to how much he owed, the date of his mortgage, etc., and as to what decedent wanted a witness for about a week before the killing, was irrelevant and inadmissible.

[Andrews v. The State.]

*8. Trial; Instructions Misleading.*—A charge asserting that the humane provision of the law is that upon the evidence there should not be a conviction unless to a moral certainty it excluded every reasonable hypothesis other than that of the guilt of the accused; that no matter how strong may be the facts, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by that full measure of proof which the law requires, is argumentative and properly refused.

APPEAL from Wilcox Circuit Court.

Heard before Hon. B. M. MILLER.

Bob Andrews appeals from a conviction of murder in the first degree. Reversed and remanded.

The defendant, Bob Andrews, was jointly indicted with John Andrews for killing Bama Andrews, the wife of Jim Andrews. It seems from the record that Jim Andrews was also found dead, whether from violence at the hands of other parties, or from self-inflicted violence, does not clearly appear. The defendant attempted to prove by the witness McKinney that the witness A. G. Andrews told him, on the night of the killing and immediately after the killing, that he ((Andrews) did not know who did the shooting or who killed Bama Andrews. He also offered to show by the same witness that on the evening before the killing Jim Andrews attempted to kill the witness, and that he was drunk and in a mood to kill people. The state was allowed to prove circumstances as to the killing of James Andrews, to which exception was reserved. What is said in reference to the introduction of the telegram, and the other facts in the case, sufficiently appear in the opinion of the court. The motion to quash the venire, and the motion to challenge the jurors, and the grounds on which the same are based, sufficiently appear in the opinnion.

The following charges were refused to the defendant: "(4) The court charges the jury a probability that some other person may have done this shooting is sufficient to create a reasonable doubt of the guilt of the defendant,

2 R

and therefore for his acquittal. (5) The court charges the jury that the humane provision of the law is that upon the evidence there should not be a conviction, unless to a moral certainty it excludes every hypothesis other than that of the guilt of the accused. No matter how strong may be the facts, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by that full measure of proof which the law requires."

The defendant demanded a severance, and was tried alone; the trial resulting in a conviction of murder in the first degree and a life sentence.

J. N. MILLER, and E. N. & P. E. JONES, for appellant. —The court erred in refusing to quash the venire on account of the variance.—*Knutt v. The State,* 63 Ala. 180; Sec. 5273, Code 1896. The court erred in permitting peremptory challenge of the juror after he had been accepted by both parties.—*Sparkes v. The State,* 59 Ala. 82; *Smith v. The State,* 55 Ala. 1; *Mooring v. The State,* 129 Ala. 66; *Roberts v. The State,* 88 Ala. 515. The court erred in refusing charge 4.—106 Ala. 44. Also in refusing charge 5.—99 Ala. 154; 115 Ala. 42.

ALEXANDER M. GARBER, Attorney General, for the State.—The two papers not being before the court this court will not review the action of the trial court in determining whether or not there was a variance.—*Brown v. The State,* 109 Ala. 70; *Bodine v. The State,* 129 Ala. 106; *Kirby v. The State,* 139 Ala. 87. The fact that Ray had served as a juror the year previous did not disqualify him.—*Harrison v. The State,* 144 Ala. 20. The court did not err in permitting the solicitor to challenge the juror. —*Henry v. The State,* 77 Ala. 75; *Murray v. The State,* 48 Ala. 675; *Drake v. The State,* 51 Ala. 30; *Spigner v.*

*The State*, 62 Ala. 383; *Daniels v. The State*, 88 Ala. 220. A predicate was sufficiently laid for the introduction of secondary evidence of the contents of the telegram.— *Stewart v. Mitchem*, 135 Aal. 546; *Tanner v. Hall*, 89 Ala. 628. The court properly refused the charges re- quested.—*Turner v. The State*, 124 Ala. 59; *White v. The State*, 133 Ala. 122; *Cowan v. The State*, 136 Ala. 101.

SIMPSON, J.—The defendant in this case was con- victed of the crime of murder in the first degree and sen- tenced to imprisonment in the penitentiary for life. The defendant moved to quash the venire, because the copy of the indictment served on him differed from the orig- inal. It is contended that the variance between the orig- inal indictment and the copy served on the defendant is that where the indictment has "whose" the copy has "whos," and where the indictment has "shooting" the copy has "shooling." In the first place, if there is any- thing in the slight variance which is not self-correctng, it would not furnish ground for quashing the venire, but only for setting aside the service. In the next place, nei- ther the original indictment nor the copy which was served on the defendant is before this court; and the court has said: "Whether a copy of the indictment served on the defendant corresponded to the orig- inal was matter for the determination of the judge pre- siding, and was determinable only by inspection and comparison of the two papers. ** * * The two pa- pers are not before us, and we cannot say there was er- ror in the ruling."—*Brown v. State*, 109 Ala. 70, 73, 74, 20 South. 103. See, also, *Bodine v. State*, 129 Ala. 106, 29 South. 926; *Kirby v. State*, 139 Ala. 87, 36 South. 721.

The fact that Ray and Stewart had served as jurors during the previous week did not render them incompe-

tent to be included in the special venire. Code 1896, § 4988;; *Harrison v. State*, 144 Ala. 20, 27, 40 South. 568.

After the state and the defendant had announced ready for trial, and after nine jurors had been selected, but none of them sworn, the state moved the court to re-examine into the qualifications of one of the nine, named Walton, "to see if he was a resident householder or free-holder," which motion was opposed by the defendant on the ground that said juror had been previously examined, pronounced qualified by the court, and accepted by both the state and the defendant. The court granted the motion, re-examined the juror and pronounced him qualified. The state was then allowed, over the objection of the defendant to peremptorily challenge said juror.

This raises a point which has not been definitely settled by our decisions. In a capital case it was held that, after a juror had been accepted by the state, and put upon the prisoner and accepted by him, the right of the state to challenge was lost, even though the solicitor and the court were ignorant of the existence of the cause when the juror was accepted.—*Stalls v. State*, 28 Ala. 25, 27. On a trial for misdemeanor, after jury No. 1 was placed in the box, and other jurors from jury No. 2 had been called and had taken their seats, the solicitor was permitted to challenge one of the jurors for cause. This court, in sustaining such action of the court below, said that special jurors in a capital felony case could not be challenged after being accepted and sworn, and the rule could not be applied to misdemeanors, except as to talesmen; that as to the regular jurors, who had already been sworn, the right to challenge existed "until, by some positive act, the juror is selected," and that "the mere calling" and the challenge of other jurors, "without the acceptance or challenge of the particular juror, mere si-

[Andrews v. The State.]

lence in regard to him," "is not an absolute waiver." The court goes on to state that it was not inclined to follow the *Stalls Case,* but, on the contrary, if the cause was discovered after the acceptance and before the juror was sworn, and the court was satisfied "that it has not been withheld from mere caprice, or from some improper motive, the challenge should not be disallowed," and goes on to remark that in that case the state did not lose the right until the juror was sworn.—*Smith v. State,* 55 Ala· 1, 7.

In the meantime, in two cases, where the wording of the bills of exceptions did not clearly indicate that the defendant had "given any intelligent and intentional acceptance of his election as a juror," the court held that in the exercise of "the great and jealous tenderness which the law indulges towards the life and liberty of the citizen," and giving the rule its "most liberal interpretation," the defendant's right to challenge was not waived until the juror was sworn.—*Murray and Bell v. State,* 48 Ala. 675, 681, 682; *Drake v. State,* 51 Ala. 30. Again, in a misdemeanor case, where the solicitor sought to challenge one of the regular panel, after the jury had been accepted by both the state and defendant, this court held it was too late, but remarked that, if it had been for cause just discovered, etc., it would not have been too late.—*Sparks v. State,* 59 Ala. 82, 86, 87. Again, where the court, in a misdemeanor case, required the defendant to announce his acceptance or not of a juror called from another panel, before the state had expressed itself, and then refused to allow the defendant to challenge, after the state had accepted, this court held that he should have been allowed the privilege; the parties not having "elected them." The court, quoting from another case, says:: "Most clearly the right of challenge may be waived; and when it is waived by the state, and the juror

is put upon the acceptanc of the accused, and he is accepted by him as one of his triors, the process of election is complete."—*Spigener v. State,* 62 Ala. 383, 388.

So, also, this court has held that "where a juror is disqualified to serve, and such disqualification was not known at the time of his acceptance, or was concealed, without lack of diligence to discover it, on the part of the objector, he may challenge for cause at any time before he is sworn."—*Roberts v. State,* 68 Ala. 515, 523. The right to challenge for cause after the jury had been selected and sworn was held to have been lost, and it remained in the discretion of the court whether or not to excuse a juror at the request of the defendant.—*Henry v. State,* 77 Ala. 75, 77. After the solicitor (in a misdemeanor case) had announced himself satisfied with the jury in the box, and before the defendant had expressed his election, it was held within the discretion of the court to allow the solicitor to revoke his acceptance and challenge a juror.—*Daniels v. State,* 88 Ala. 2220, 7 South. 337. The decisions in other states seem to be in conflict on this subject. 12 Ency. Pl. & Pr. 491-495.

There is more reason for relaxing the rule in regard to a challenge for cause than as to peremptory challenge, and, as suggested in some of the cases, the humane principles of the law suggest a more liberal interpretation in favor of the defendant than against him. We do not understand that the *Stalls Case* was overruled, but only qualified, as to challenge for cause, in cases where it was discovered after acceptance, and the court is satisfied it was not withheld from an improper motive. In the light of all of the decisions, and of the safeguards which the law erects around the defendant, and realizing how such a practice might work serious wrong to the defendant, we hold that the court erred in allowing the state to peremptorily challenge the juror after he had been ac-

[Andrews v. The State.]

cepted by both parties and no special reason was shown why the regular order of the court should be departed from.

The questions to the witness McKinney as to what he had previously testified that A. G. Andrews said, also as to whether James Andrews attempted to kill him, were irrelevant and properly excluded. The testimony with regard to the body of James Andrews, the condition of his knife, etc., were competent, as tending to throw some light upon the question as to whether he could have killed his wife; there having been testimony in regard to threats made by him.

The question by the defendant to the witness Hunter as to whether Bama Andrews had her baby in her arms on a previous occasion when her husband was accused of offering violence to her was irrelevant and properly excluded, as were also the details of James Andrews' having been bound and tied after he had been arrested for such assault. The objection by the state to the question to the witness Hunter as to what Bama Andrews said about James Andrews 'attempting to kill her was properly sustained, as this was clearly hearsay testimony, and at best was but the statement of the conclusion of Bama Andrews.

The witness Fuller stated that he was the telegraph operator; that he took down the message from Bob Andrews; that he had it at the last trial, when it was introduced in evidence, and had not seen it since. The clerk of the court stated that the telegram went out with the jury; that he had never seen it since, though he had made diligent search for it in the jury room and among the papers on file in the case. This was sufficient to authorize proof of its contents, and the objection of the defendant was properly overruled.—*Saunders v. Tuscumbia Roofing, etc., Co.* 148 Ala. 519, 41 So. 982, 983.

The conversation between the witness Clarence An-drews and his brother, the defendant, was irrelevant, and the objection of the state was properly sustained. The same is true with regard to the question by the defendant to the witness McLean, "What did the woman want you to do?" at the time they are said to have fled to his house, a week before the killing; also of the questions to Waller about drafts drawn by James Andrews, as to how much said James Andrews owed N. Waller, and the date of the mortgage; also of the questions as to whether the mother of Bama Andrews was ever married, as to what Clarence Andrews said about the check, and about the condition of James Andrews' mind, and what Bama Andrews said to him.

The statement, in the showing of what the witness R. E. McWilliams, Jr., would testify in regard to James Andrews' trying to send a telegram to John Andrews, was also properly excluded as irrelevant.

Charge No. 4, requested by the defendant, was properly refused. Under the indictment and the evidence in this case, even though the shooting may have been done by some other person, yet it would not follow that the defendant was entitled to acquittal. For the same reason, and because charge No. 5, requested by the defendant, was calculated to mislead, it was properly refused. —*Turner v. State*, 124 Ala. 59, 63, 27 South. 272.

The judgment of the court is reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and HARALSON and DENSON, JJ., concur.