[No. 2225]

## THE STATE OF NEVADA, RESPONDENT, *v.* ADOLFO SELLA, APPELLANT.

[168 Pac. 278]

1. WITNESSES—CHARACTER OF DECEASED—CROSS-EXAMINATION.

    In prosecution for homicide, where defendant introduced evidence of deceased's bad character, and the state introduced witnesses in rebuttal thereof, defendant should have been allowed to cross-examine the witnesses as to the particular facts upon which they based their statement of reputation, and even to inquire whether they had heard of specific brawls in which deceased had engaged.

2. WITNESSES—CHARACTER OF DECEASED—CROSS-EXAMINATION.

    The rule that an interrogation assuming the existence of a fact not in evidence is not admissible does not prevent the answering of questions testing the knowledge of general reputation of a character witness by inquiry as to his having heard of specific acts.

3. CRIMINAL LAW—OBJECTIONS TO QUESTIONS TO WITNESS.

    Where one accused of homicide was permitted without objection to introduce evidence attacking deceased's reputation for peace and quiet before he had testified to an overt act of deceased looking toward his claim of justifiable homicide, it was too late for the state to object to questions on cross-examination of character witnesses as to whether they had heard of deceased's acts in testing whether they knew his reputation.

4. HOMICIDE—CHARACTER OF DECEASED—EVIDENCE—ADMISSIBILITY.

    The character or reputation of the deceased in homicide cases is to be proven rather by evidence of general reputation of the deceased in the community in which he lived than by particular acts or instances which were not a part of the *res gestæ*, nor connected therewith.

5. CRIMINAL LAW—APPEAL—PREJUDICE.

    Refusing to permit one accused of homicide to cross-examine witnesses as to whether they knew of certain acts of deceased showing that he was of turbulent spirit was harmful and substantial error.

6. WITNESSES—CHARACTER OF DECEASED—CROSS-EXAMINATION.

    In prosecution for murder, wherein accused claimed self-defense, witnesses as to character of deceased for peace and quiet were properly cross-examined by questions asking whether they knew certain persons and remembered whether deceased had assaulted them; the form of the questions being unobjectionable.

APPEAL from Sixth Judicial District Court, Humboldt County; *Edward A. Ducker*, Judge.

Adolfo Sella was convicted of murder in the second degree, and he appeals. **Reversed.**

*J. H. Langwith, James M. Frame,* and *Howard Browne,* for Appellant:

The evidence in this case is not sufficient to support a conviction of murder. From all the circumstances, it is apparent that there was not the element of murder in the case. For that reason, any error committed upon the trial must be presumed to be prejudicial. The highest offense of which the appellant could have been legally convicted was manslaughter, and therefore the judgment should be reversed.

Upon the trial of a defendant who relies upon self-defense, the previous bad reputation of the deceased may be shown, as tending to throw light upon who probably was the aggressor. (23 Nev. 103.) Where the state offers witnesses to bolster up the reputation of the deceased, the defendant may, upon cross-examination, show by such witnesses specific acts of bad conduct on the part of the deceased. (21 Cyc. 910.) The issue in this case was self-defense. "When the issue of self-defense is made in a trial for homicide, and thus a controversy arises as to whether the deceased was the aggressor, one's persuasion will be more or less affected by the character of the deceased." (Wigmore on Evidence, vol. 1, sec. 63; Underhill on Criminal Evidence, 2d ed. sec. 324.)

*Geo. B. Thatcher,* Attorney-General; *E. T. Patrick,* Deputy Attorney-General, and *Wm. McKnight,* Deputy Attorney-General, for Respondent:

The trial court did not err in overruling objection to questions propounded by counsel for the state to certain witnesses.   Objection was not made until after answers had been given.   At no time did counsel for appellant move to strike out the evidence.   One cannot speculate on what the answer to a question will be and then object to the question and move to exclude the answer, if the answer is responsive to the question. (*Rutledge* v. *Rowland,* 161 Ala. 114.) Objection to evidence must always be at the earliest opportunity after the objection becomes apparent.   If apparent when offered, the objection should be made then.   If apparently objectionable when offered, but subsequent developments show otherwise, a motion to strike should be made. (*Sharon* v. *Minnock,* 6 Nev. 377, 385.)

Courts do not permit cross-examination of a character witness, either as to what the witness has heard or as to his knowledge about particular facts or specific matters. (*Gifford* v. *People,* 87 Ill. 210, 214; *Aiken* v. *People,* 183 Ill. 215; *Henrickson* v. *Commonwealth,* 23 Ky. L. Rep. 1191; *State* v. *Dickerson,* 77 Ohio St. 34; *Carthans* v. *State,* 78 Wis. 560.)   However, a witness who has testified to the good character of a person may, for the purpose of testing his information and credibility, but not to establish the truth of such facts, be asked on cross-examination if he has not heard of the commission of particular acts by the party under investigation, or reports or rumors to that effect, inconsistent with the reputation attributed to him by the witness. (*Ingram* v. *State,* 67 Ala. 67; *Jackson* v. *State,* 78 Ala. 471; *People* v. *Ah. Lee Doon,* 97 Cal. 171; *People* v. *Weber,* 149 Cal. 325; *Randall* v. *State,* 132 Ind. 539; *Commonwealth* v. *O'Brien,* 119 Mass. 342, 346; *State* v. *McLaughlin,* 149 Mo. 281; *State* v. *Knapp,* 45 N. H. 148; *People* v. *Laudiero,* 192 N. Y. 304; *State* v. *Merriam,* 34 S. C. 16; *Bearden* v. *State,* 44 Tex. Cr. 758.)   It is improper, even on cross-examination, to ask questions tending to

elicit the knowledge of the witness as to the conduct or particular acts of the person whose reputation is in issue. (*Moulton* v. *State*, 88 Ala. 116; *Cook* v. *State*, 46 Fla. 20; *State* v. *McGee*, 81 Iowa, 17; *Kearney* v. *State*, 68 Miss. 233; *State* v. *Osborne*, 54 Or. 289; *Green* v. *Dodge*, 79 Vt. 73.) The credibility of a witness may be tested in various ways. (3 Enc. Ev. 47.)

A question which assumes the existence of a fact not in evidence should not be asked. (*Davis* v. *Cook*, 14 Nev. 265, 287; *State* v. *Fronhofer*, 38 Nev. 448, 466; *Henley* v. *State*, 158 S. W. 197.) An error of the trial court in excluding evidence relative to the character of deceased, if not prejudicial to defendant, will not constitute reversible error. (*Amos* v. *Commonwealth*, 16 Ky. L. Rep. 358.) Even if prejudice be presumed, if the court is satisfied that no harmful result of any substantial right was produced by the errors, the judgment of the lower court should be affirmed. (Rev. Laws, 7302, 7469; *State* v. *Mircovich*, 35 Nev. 485.) The extent of the cross-examination of a character witness must be left to the discretion of the court. (*Oliver* v. *Pate*, 43 Ind. 132; *Basye* v. *State*, 45 Neb. 261; *State* v. *Doris*, 51 Or. 136; *State* v. *McLaughlin*, 149 Mo. 33; *City of Greenville* v. *Spencer*, 77 S. C. 50, 57 S. E. 638.) The court could not have erred in excluding the evidence of specific acts touching upon the character of the deceased, the same being clearly incompetent and inadmissible. (*State* v. *Pearce*, 15 Nev. 191.)

By the Court, McCARRAN, C. J.:

The appellant was convicted in the District Court of Humboldt County of murder in the second degree. The charge grew out of the killing of one Marcel Edmund Ramella in a saloon in the town of Winnemucca in that county. The killing was by shooting with a pistol. The record discloses that both the appellant and deceased had been drinking during the day and up to the time of the incident out of which deceased lost his life. It appears that prior to the day on which the shooting

occurred, and indeed almost up to the time at which the fatal shot was fired, appellant and the deceased were friends. It is disclosed from the record that the deceased took dinner at the Roman Tavern some time about 11:30 a. m. on the day on which he lost his life. After dinner appellant and the deceased became engaged in a scuffle or wrestle in the bar-room immediately adjoining the dining-room. Both men were seen grappling upon the floor of the bar-room. Appellant, after disengaging himself from the deceased, went behind the bar, and there followed some considerable discussion relative to the merits of the respective parties in the wrestling game, an offer being made by appellant to wrestle the deceased for $100 at a public place. There is testimony in the record of violent, threatening utterances having been made by deceased toward appellant immediately following the discussion relative to the wrestling bout. The deceased had left the bar-room in which appellant was tending bar and was standing on the outside somewhere close to the edge of the sidewalk in front of the door. Appellant, having armed himself with a revolver, went out through the front door, and it is there that he contends and testifies that the deceased came toward him in a threatening manner, holding his hands, or at least one of his hands, somewhat behind him, and said, "Here is where you get your last."

The plea of self-defense was interposed. In the statement of counsel for appellant made to the jury when the prosecution had closed its case in chief, he declared to the jury that the defense would attempt to prove:

"That he [the deceased] was making an effort to strike the defendant with a knife, and that the defendant, for the purpose of protecting himself, drew the pistol which has been offered in evidence, and in that struggle * * * we will show that there was a struggle which was commenced by the deceased, the deceased trying to use a knife and at the same time grappling with the defendant; and in that struggle the defendant

attempted to protect himself from the onslaught of the deceased and received this shot from the pistol which he held in his hand. The testimony will show that the hand in which the pistol was held was being grappled by the deceased. * * * We shall attempt to show you that the killing of the deceased was under such circumstances as made the acts of the defendant justifiable under all circumstances of the case."

The appellant having taken the stand in his own behalf, and after having related at length the incidents immediately preceding the shooting, stated:.

"I walked out the door. Say this is the door and there is a little space before you get out on the sidewalk. The first step on the sidewalk I turned myself to the right where he was standing, and he says, 'Now, here you are,' and he came in a rush, walking pretty fast. He was some four or five or maybe six steps away from me, and I says, 'Edmund, why not come in and have a drink together and call this all off?' And he came all at once and said, 'Here is where you get your last,' and I thought for sure he had a knife, and at the same time I drew my body back this way and he ran into my body, but didn't have a chance to strike me very hard; and I put my arm up somewhere around his body and at the same time I pulled out the gun and says, 'Ramella, look out,' and at the same time pulled out the gun. The gun was pointed toward the ground, and with his left hand he held and grabbed my right hand and my right hand made this kind of a motion [up] and the shot went off.

"Q. Did you believe yourself to be in danger at the time you drew this pistol? A. Yes, sir; because he came towards me, and his actions, and at the same time he said, 'Here is where you get your last.'"

The defendant in his case in chief was permitted to introduce evidence tending to establish that the reputation of the deceased was that of a violent and dangerous man, or at least that when intoxicated his reputation for peace and quiet was bad in the community in which he lived. This evidence was permitted

to be introduced before the defendant had taken the stand in his own behalf or had attempted to establish the element of self-defense. It went before the jury without objection.

The state in rebuttal produced a number of witnesses to testify to the good reputation borne by the deceased in his lifetime in the community in which he resided, and it is with reference to the cross-examination of these witnesses that one of the principal errors assigned to the trial court is brought here for review.

The state's witness, F. M. Buckingham, after having testified to his being acquainted with the deceased during his lifetime, and to his having known him for a period of approximately three years spent in Paradise Valley, Humboldt County, was asked the general question in direct examination:

"Are you acquainted with his [deceased's] reputation in that community for peace and quiet? A. Yes, sir.

"Q. Do you know whether that was good or bad? A. I consider it good.

"Q. He bore a good reputation for peace and quiet in that community, did he? A. Yes, sir.

"Q. Did he or did he not have a bad reputation in that community for peace and quiet while drinking? A. Well, that I couldn't say."

This last question was strenuously objected to by counsel for the defendant, and upon the court overruling the objection the witness made the further answer:

"Why, I don't know as I could say what his reputation was when he was drinking because I never saw him in that state or condition.

"Q. (By the prosecuting attorney.) Do you know anything against his reputation? A. No, I do not.

"Q. Are you acquainted with what the people of the community say of him? A. Generally so."

On cross-examination, counsel for the defendant propounded the following questions:

"Q. Do you know Johnnie Forgnone? A. Yes, sir.

"Q. Do you remember about the deceased assaulting him?"

This question was objected to by the prosecuting attorney "as not proper cross-examination," and the objection was sustained by the court for that reason. The exception was taken by counsel for the defendant "upon the ground that the same is proper cross-examination for the purpose of testing the knowledge of this witness as to the general reputation of the deceased." Counsel for defendant then made the following offer:

"Defendant now at this time by the cross-examination of this witness offers to show that the witness had heard of deceased making an assault upon Johnnie Forgnone, and that Andrew Mosci took a knife away from the deceased and ended the difficulties; and we offer to show that this witness has heard of numerous difficulties in which the deceased was engaged while intoxicated and in which he committed assaults upon other people."

The offer being denied by the court, counsel for defendant reserved an exception "upon the ground that the same is proper examination for the purpose of testing the knowledge of this witness as to the general reputation of the deceased."

The witness Steve Ferraro, being called by the prosecution in rebuttal, was asked the question:

"Q. Did you know what his [deceased] reputation was in that community for peace and quiet during the time he lived there? A. Yes, sir.

"Q. You know, do you? A. Yes, sir.

"Q. What was his reputation for peace and quietness? A. Quiet.

"Q. Was it good or bad? A. Good.

"Q. Did he have a reputation in that community for being quarrelsome and dangerous when intoxicated? A. I have seen him—

"Q. Can you say whether he had or had not such a reputation. A. No, sir.

"Q. Well, was his reputation there that he was dangerous when drinking? A. No, sir."

On cross-examination, the following question was propounded:

"Did you hear the circumstances of his [deceased] having a fight with Johnnie Forgnone?"

Objection to this question on the ground that it was not proper cross-examination was sustained by the trial court, and an exception reserved by the defendant on the ground that the same was proper cross-examination to test the knowledge of the witness as to general reputation. The witness was further interrogated on cross-examination:

"Q. I will ask you to state if you have heard of the circumstances, having a fight with Mr. Achrato."

Objection to this question was sustained on the ground that it was not proper cross-examination, and an exception to the ruling was reserved by the defendant "for the reason that the same is proper cross-examination for the purpose of showing the extent of the knowledge of the witness as to the general reputation of the deceased."

The further question was propounded on cross-examination:

"Q. I will ask you also if you have heard of the circumstances of the constable of Paradise requesting Mr. Recanzone to keep this young man [the deceased] out of town, because of his quarrelsome disposition?"

Objection to this question, on the ground that it was "not proper cross-examination," was sustained by the trial court and an exception reserved by the defendant "for the reason that the same is proper cross-examination for the purpose of testing this witness as to his knowledge of the general reputation of the deceased when intoxicated."

To the witness Abel the prosecution put the question:

"State whether he did or did not have a bad reputation for peace and quiet while drinking. A. I never heard of him having a bad one."

On cross-examination, objection was sustained to the question:

"Did you ever hear of the circumstances of him having a fight with Johnnie Forgnone at Paradise?"

1. The record discloses that to all of the character

witnesses produced in rebuttal by the prosecution the defendant's counsel propounded interrogatories assuming to elicit the witnesses' knowledge of particular events. The refusal of the court to permit counsel to cross-examine in this manner constitutes the basis of an assignment of error, the seriousness of which we cannot overlook. If the question here presented was one arising out of an examination of a witness in chief, then an entirely different view as to the rule applicable might be taken; but it is, we think, established by an overwhelming line of authority that in testing the credibility of a character witness the same means may be resorted to as may be employed to determine how far a witness who testifies to any other fact relative to the issue is to be believed; and into this comes the question of the sincerity of the witness, his trustworthiness or his bias, the extent of his knowledge or information, his acquaintance with the expressions of people generally in the community in which the person whose character is in question resides or resided, his opportunity for acquiring information on the subject—all these elements constitute proper avenues for inquiry by cross-examination.

The plea of self-defense having been interposed and contended for, and the hostile demonstration by the deceased having been testified to, it was permissible, as tending to establish who was the aggressor in the fatal affray, for the defendant to show, if he could, the general reputation of the deceased as that of a violent or dangerous person. When the prosecution sought on rebuttal to establish the good reputation of the deceased, it was proper, under the rules of cross-examination, for the defendant to test these character witnesses by every means legitimate, by every avenue through which the credibility of such witnesses, their sincerity, their disinterestedness, their knowledge or information or their acquaintance with the general expressions of the people in the community might be ascertained.

Mr. Greenleaf, in his work on Evidence, speaking of

the question of testing a witness who speaks to good character, says:

"It will expose the untrustworthiness of his testimony if he admits that rumors of misconduct are known to him; for the knowledge of such rumors may well be inconsistent with his assertion that the person's reputation is good. Accordingly, the propriety of inquiring whether he has not heard that the person whose reputation he has supported has been charged with this or that misdeed has usually been conceded. A few courts, however, usually through a misunderstanding of the real purpose of the inquiry and supposing it to be in violation of the rule against proving particular acts of misconduct, have forbidden it. On a similar principle, a witness impeaching reputation may be tested on cross-examination by requiring him to specify the sources of his information, and in particular the persons whose remarks have served to give rise to his assertion that the reputation is bad, because there is practically no other effective way of exposing a false or unfounded assertion of a bad reputation. This practice seems to be generally conceded to be proper. The preceding two principles apply in the proof of a defendant's or other person's reputation as well as of a witness's reputation." (1 Greenleaf on Evidence, 16th ed. 588.)

In the noted case of *Annis* v. *People,* 13 Mich. 511, this question being before the Supreme Court of Michigan, Judge Cooley, after citing approvingly the section of Greenleaf just referred to, said:

"The real purpose of this cross-examination is to enable the court and jury to determine whether the impeaching witness in fact knows the general reputation of the other, and, if so, whether he testifies truly in regard to it."

Continuing, the learned jurist says:

"It was suggested, on the argument, that the witness might, with propriety, be asked whether the unfavorable reports which prevailed had reference to the question

of truth, so as to test his accuracy in assuming to speak to a general reputation for veracity; but if the examination must stop here, its purpose would very generally be defeated. There is no case where a thorough cross-examination is more important to an elucidation of the truth than where a witness in giving an answer to a general question which calls both for matter of fact and matter of opinion. If a witness can shield himself behind an answer so general that, even if false, the person who knows that fact cannot testify with definiteness on the subject, we may well believe that bad men will frequently resort to this species of evidence where the truth will not warrant it. * * * Nothing is more common in principle than to see a witness placed upon the stand to impeach the general reputation of another for veracity, when a cross-examination demonstrates that the reports only relate to a failure—probably an honest one—to meet obligations, while the party's real reputation for truth is above suspicion. Nothing short of a cross-examination, which compels the impeaching witness to state both the source of the reports and their nature, will enable the party either to test the correctness of the impeaching evidence, or to protect the witness who is assailed, if he is assailed, unjustly."

We find the English courts dealing with the question here under consideration. In *Reg.* v. *Wood and Parker,* a witness was called to speak of the character of the prisoner who deposed to his having known the prisoner for some years and gave him good character. On cross-examination by the prosecution, the witness stated that he never heard anything against him. He was then questioned as to whether he ever heard of a robbery which had taken place in the neighborhood some years previous, and on his answer in the affirmative was then asked, "Did you ever hear that W. was suspected of having done it?" The court, in dealing with the question, said:

"A man's character is made up of a number of small circumstances, of which his being suspected of misconduct is one. The question may be put." (*Reg.* v. *Wood and Parker,* The Jurist, vol. 5, 1841, p. 225.)

To the same effect we find the case of *Rex* v. *Martin,* 25 Eng. C. L. Rep. 575, 6 Car. & P. 562.

In the case of *Steele* v. *State,* 83 Ala. 20, 3 South. 547, this question was considered, and we find the Supreme Court of Alabama expressing itself thus:

"While one's character or reputation may be assailed by showing a general bad repute in the neighborhood of his residence, or where he is known, particular acts of bad conduct, or special circumstances of disgrace, are not admissible for such purpose on direct examination, although they often may be on cross-examination by the opposite party. (*Jones* v. *State,* 76 Ala. 9; *Jackson* v. *State,* 78 Ala. 471; 1 Greenl. on Ev. 14th ed. sec. 55.)"

In the case of *State* v. *Crow,* 107 Mo. 341, 17 S. W. 745, the Supreme Court of Missouri expresses our views on the question of the right of the defendant in this case to cross-examine the several witnesses for the purpose of testing their credibility and knowledge of the general subject. There a witness in behalf of the defendant testified to his good reputation. On cross-examination he was asked, and permitted to answer over defendant's objection, if he had not heard of defendant being indicted for stealing other cattle previous to this (defendant was on trial for the larceny of a cow), and if he had not heard that the defendant had been charged with violating the revenue laws and selling whisky without license. The court, after commenting on the right of the accused to introduce evidence of his previous good character, and the right of the prosecution to meet such by proof or by evidence of bad reputation, said:

"The evidence thus allowed, whether given in support or impeachment of the character of the accused, must,

as a rule, be confined to general reputation, and cannot be extended to particular facts. (*State* v. *Reed,* 85 Mo. 194; *State* v. *Reavis,* 71 Mo. 420.) If the testimony of this witness had been offered by the state as original evidence for the purpose of rebutting the evidence of good character previously introduced by the state, it would have been clearly inadmissible. Defendant was presumed, when he put his general character in issue, to be prepared to defend it; but he could not be held ready to defend other independent acts with which he was not charged. (*State* v. *Tabor,* 95 Mo. 590, 8 S. W. 744; *State* v. *Goetz,* 34 Mo. 85.) The ruling of the court cannot be defended upon the ground that the evidence was admissible for the purpose of rebutting defendant's evidence of good character; but, after careful consideration, we are satisfied that it was properly admitted in cross-examination of the witness to determine his credibility and the sources of the information upon which the knowledge of defendant's character was obtained. * * * When defendant put this witness forward to support his character he subjected him to legitimate cross-examination upon the subject of inquiry, and himself to such disaster as might result therefrom. Character is made up of acts and conduct, and evidence in respect to it is, by the rule of law, confined to the testimony of neighbors, who, by association, know the general estimate placed upon it. Inquiry as to information of important facts and conduct of a defendant's life would certainly be relevant to show the grounds upon which the witness had made his estimate of character. (1 Best, Ev. sec. 261; *Ingram* v. *State,* 67 Ala. 71; *Commonwealth* v. *O'Brien,* 119 Mass. 346, 20 Am. Rep. 325.)"

The court there cited approvingly the assertion of the rule as made by Judge Cooley in the case of *People* v. *Annis, supra,* and as laid down by Mr. Greenleaf in his work on Evidence. The rule of cross-examination as to witnesses offered by the defendant to establish his own good reputation is no less applicable to witnesses offered by the prosecution in an affirmative

attempt to establish the good reputation of the deceased
in the community in which he resided. In the case of
*State* v. *McLaughlin,* 149 Mo. 19, 50 S. W. 315, we find
the Supreme Court of Missouri again dealing with the
question here under consideration in a case of murder
where self-defense was interposed. The prosecution
sought to impeach the character of a witness offered
by the defendant. The witness, having testified to the
good reputation of the one sought to be impeached,
stated on cross-examination that he had never heard
anything against the party. He was asked if he had
heard that the party kept an unlawful dive in a given
place. He answered that he had, and that he had heard
that he was selling liquor illegally. He was asked if
he had not heard of various other disreputable trans-
actions of the party, and answered that he had heard
of some and not of others. The objection to the cross-
examination was that it was incompetent and irrelevant.
The court said:

"It is settled law that, when a witness is called to
sustain or attack the reputation of another witness, the
opposite party may cross-examine him liberally as to
his means of knowledge, and test his own truthfulness,
and it is largely a matter of discretion with the court
how far such an examination shall be allowed."

In the case of *De Arman* v. *State,* 71 Ala. 351, the
court had before it the identical question presented in
the case at bar. There, as here, rebutting witnesses for
the state testified to the good character of the deceased.
They were then asked on cross-examination whether
they had not heard of several enumerated acts of vio-
lence done by the deceased. The court refused to allow
the witnesses to answer these questions. This was
declared to be error, the supreme court saying:

"Character, in this connection, is the estimate which
the public places on the person, the subject of the
inquiry; his reputation. When a witness is called to
testfy in regard to it, he must not speak of or from
his individual knowledge of the acts or conduct of the
person inquired about. His reputation or standing,

whether good or bad, is the matter to be deposed to. Character is the estimation in which one is held by the public who know his standing. Thus one may have the reputation of being peaceable or quarrelsome, harmless or dangerous, and bloodthirsty, truthful, or the contrary, honest or dishonest. A witness, having knowledge of this estimate in which such person is held by the public, may testify as to his reputation or character, although he may have no personal knowledge that he is peaceable, truthful, honest, or the contrary. On cross-examination a witness as to character may be interrogated as to the foundation of his opinion. And, as character manifests itself by the manner in which one is esteemed, spoken of, or received in society, it is always permissible, on cross-examination, to ascertain the extent of the witness's information, and the data from which he draws his conclusion. The weight of such testimony must depend largely on the reasonableness of the conclusion the witness draws from the premises as he may depose to them."

To the same effect was the case of *Ingram* v. *State,* 67 Ala. 67. In the case of *Moulton* v. *State,* 88 Ala. 116, 6 South. 758, 6 L. R. A. 301, the Supreme Court of Alabama, being again called upon to deal with the question, gave a lucid expression of the true rule, saying:

"In several cases we have said, in general terms, that, while particular acts of bad conduct are not admissible to assail character on the direct examination, a witness deposing to general character may be cross-examined as to particular facts, in order to test the soundness of his opinion, and elicit the data on which it was founded. * * * By this is meant, not the truth of such particular facts, but circulating rumors of them, which form a part of the general repute, and help to make up one's good or bad character."

This rule applicable to cross-examination of character witnesses was again emphasized by the Supreme Court of Alabama in the case of *Tesney* v. *State,* 77 Ala. 33. In the latter case the witness was asked on cross-examination if he had not heard of the deceased going

over into an adjoining county and having several rows
and shooting scrapes over there. The trial court sus-
tained the objection of the prosecution, and the supreme
court, reaffirming its conclusion in the De Arman case,
held that the act of the trial court in this respect was
error.

The Supreme Court of Oregon had occasion to deal
with the question in the case of *State* v. *Ogden*, 39 Or.
195, 65 Pac. 449. In that case the defendant, on trial
for rape, introduced testimony tending to show that the
general reputation of the prosecutrix for chastity and
virtue in the community in which she resided was bad.
The state called a witness in rebuttal, who testified
to her good reputation. On cross-examination by the
defendant, the witness was interrogated:

"Did you ever hear of her being discharged from
A. Dickson's, the liveryman there (at Lagrande), on
account of immoral conduct? Did you know of her
being discharged by J. A. Darrin from the Eagle restau-
rant on account of her immoral character? Did you
ever hear of her being discharged by Mrs. Richard
Kelly on account of her immoral habits?"

Objection having been sustained to these interroga-
tories, the defendant's counsel offered to prove by the
witness the facts implied in the questions so objected
to, but the proffer was rejected by the trial court. The
supreme court said that, the witness "having testified
that the reputation of the prosecutrix for chastity and
virtue was good, 'as far as he had heard,' the questions
propounded to him on cross-examination were calculated
to call his attention to the alleged rumors derogatory
of her character in these respects, and to test his
veracity in attributing to her such general reputation."
In that case the court referred to a section of the statute
bearing upon the subject of cross-examination (Hill's
Ann. Laws Or. sec. 837), but in announcing its conclu-
sion on the subject, the court based the same on the
broad general principle that inasmuch as the questions
were propounded to the witness on cross-examination
and related to and were connected with the matter

stated by him in his direct examination, the court's refusal to permit the witness to answer such questions was not a matter within the exercise of judicial discretion, but was the denial of an absolute right granted to the defendant, and hence reversible error. The court in that case referred approvingly and based its conclusion upon the doctrine as laid down in *Ingram* v. *State,* *supra,* and further referred to the following cases, all applicable to the subject: *Thompson* v. *State,* 100 Ala. 70, 14 South. 878; *State* v. *Pain,* 48 La. Ann. 311, 19 South. 138; *People* v. *Ah Lee Doon,* 97 Cal. 171, 31 Pac. 933; *McDonel* v. *State,* 90 Ind. 320; *Basye* v. *State,* 45 Neb. 261, 63 N. W. 811; *People* v. *Pyckett,* 99 Mich. 613, 58 N. W. 621; *State* v. *Crow, supra; People* v. *McKane,* 143 N. Y. 455, 38 N. E. 950; *State* v. *Jerome,* 33 Conn. 265. The case of *State* v. *Ogden, supra,* was again referred to approvingly and the doctrine applicable to the subject at bar reenunciated by the Supreme Court of Oregon in the case of *State* v. *Doris,* 51 Or. 136, 94 Pac. 44, 16 L. R. A. n. s. 660.

The question here under consideration was dealt with by the Supreme Court of Illinois in the case of *Nordgren* v. *People,* 211 Ill. 425, 71 N. E. 1042. The application of the rule there was under most peculiar circumstances, and yet not unlike those presented by the record in the case at bar. There the defendant was accused of the murder of his wife by giving her whisky which contained strychnine or some other kind of poison. Testifying in his own behalf, he stated that his wife was not only addicted to the drinking of intoxicating liquors, but that she had been untrue and unfaithful to him, and he stated that certain persons, naming them, including one Curtis, had told him about his wife's conduct and infidelity. Subsequently the state put Curtis upon the stand and propounded the following question:

"Mr. Curtis, I want to ask you to state to the jury as to whether or not you at any time, of your own knowledge, saw Mrs. Nordgren do anything that was wrong. A. No, sir."

In cross-examination, counsel for the defendant asked him what he knew of the deceased, but the court refused to allow the question. This refusal was held to be error, the supreme court reasoning thus:

"The witness had stated that he had not at any time of his own knowledge seen Mrs. Nordgren do anything that was wrong. But he may have had some knowledge of her wrongdoing, which he did not see with his own eyes. At any rate, the defense had a right to cross-examine him as to the character or extent of his knowledge of the deceased. This right of cross-examination was denied, and we think improperly."

In the case of *Young* v. *State*, 41 Tex. Cr. R. 442, 55 S. W. 331, the Court of Criminal Appeals of Texas had before it an appeal from a conviction of murder in the second degree. There the defendant and his brother were implicated in the homicide. The brother of the deceased was killed in the affray. Defendant produced witnesses to testify that his brother was a man of good, peaceable, orderly disposition and reputation. In cross-examination of appellant's witness, the state inquired as to the brother of appellant having had a difficulty about a year preceding his death. The court held that the testimony was admissible on cross-examination of appellant's own witness. In *Bearden* v. *State*, 44 Tex. Cr. R. 578, 73 S. W. 17, the court held it proper to interrogate on cross-examination if the character witness had not heard of certain altercations between the deceased and third persons. In the case of *People* v. *Ah Lee Doon*, 97 Cal. 171, 31 Pac. 933, that court held that on cross-examination of witnesses who testified to the good disposition of a defendant it was proper to interrogate as to their having heard of his prior conviction of murder, and to his having drawn a pistol on different persons.

A most significant application of the rule which we deem in point is found in the California case of *People* v. *Lamar*, 148 Cal. 564, 83 Pac. 993. There the character witnesses had testified that the general reputation of the deceased for peace and quiet was good. He was

then asked if this was true of deceased under all circumstances, and replied that it was not. He was asked to explain what he meant by that answer. Objection to this interrogatory was sustained by the trial court, and on motion the answer of the witness that under all circumstances his reputation for such traits was not good was stricken out. The supreme court, speaking through Mr. Justice Lorigan, held that the defendant was not precluded by the answer of the witness from showing, if he could, that the favorable reputation testified to was not the same under all circumstances and conditions. The doctrine laid down by the Supreme Court of California in that case, holding as it does that it might be shown, even on direct examination, that the deceased possessed different characters or different traits adapted to different localities or different conditions of mind, or that he may have had one reputation for peace and quiet when sober and another for these same traits when drunk, emphasizes the rule which we deem applicable to the matter at bar, that where good reputation as to the deceased for peace and quiet is sought to be established by the prosecution, the defendant on cross-examination may seek to test the character witnesses by all or any of the avenues by which such may be accomplished within the scope of legitimate cross-examination. In two other significant cases the Supreme Court of California has emphasized the rule that is directly applicable to the matter at bar: *People* v. *Gordon,* 103 Cal. 573, 37 Pac. 534; *People* v. *Mayes,* 113 Cal. 624, 45 Pac. 860.

In passing upon this question the Supreme Court of Nebraska brought out that keen line of distinction which differentiates evidence offered as to particular acts or specific conduct for the purpose of establishing general reputation from such acts or conduct sought to be elicited from a character witness on cross-examination for the purpose of testing his veracity, fairness, or knowledge of the subject. In the case of *Patterson* v. *State,* 41 Neb. 538, 59 N. W. 917, the Nebraska court referred to its former opinion and decision in the case

of *Olive* v. *State,* 11 Neb. 1, 7 N. W. 444, wherein it held that where a person accused of crime adduces evidence of good character or reputation, it is not competent for the prosecution to put in evidence particular facts tending to prove it to be bad. In the case of *Basye* v. *State,* 45 Neb. 261, 63 N. W. 811, the question was again presented to that court. There the error complained of grew out of the testimony of witnesses who were offered by the defense as to his general reputation for peace and quiet. On cross-examination each of the witnesses, over the objection of the defendant, stated that he had heard of the defendant having a quarrel with and striking a man several years before while he resided at a different place. The appellant there contended that under the rule laid down in *Olive* v. *State* and *Patterson* v. *State, supra,* the eliciting of such testimony by the prosecution on cross-examination was error. The court in dealing with the question said that the principle was not correctly applied to the facts in the two former Nebraska cases, and held in substance that while particular facts are inadmissible in evidence upon direct examination for the purpose of sustaining or overthrowing character, yet this doctrine does not extend to cross-examination. "It is firmly settled," says the court, "by the adjudications in this country that, upon cross-examination of a witness who has testified to general reputation, questions may be propounded for the purpose of eliciting the source of the witness's information, and particular facts may be called to his attention, and he be asked whether he ever heard them." Then follows the reasoning of the court setting forth the true principle upon which questions of this nature are permissible in cross-examination as distinguished from direct, saying:

"This is permissible, not for the purpose of establishing the truth of such facts, but to test the witness's credibility, and to enable the jury to ascertain the weight to be given to his testimony. The extent of the cross-examination of a witness must be left to the discretion of the trial court. The questions put to the

several witnesses were within the scope of a legitimate cross-examination, and there was no abuse of discretion in permitting them to be answered."

Supporting this principle we find the court citing the cases of *People* v. *Annis, supra; Ingram* v. *State, supra; De Arman* v. *State, supra.*

In the case of *State* v. *Arnold,* 12 Iowa, 481, a defendant on trial produced a witness for the purpose of establishing his good character, and on the examination in chief the witness stated, "His character was divided." The attorney for the prosecution then asked the witness "what particular acts of his life he had heard spoken of." The witness proceeded to relate various acts of petit larceny that he had been accused of by report. The supreme court in dealing with the matter, after referring to its former decision in *Gordon* v. *State,* 3 Iowa, 410, said, in view of the latitude which the court may legitimately allow on cross-examination, there was no error in refusing to reject such testimony. The Supreme Court of the State of New York, in the case of *Carpenter* v. *Blake,* 10 Hun, 358, when called upon to deal with the question at bar, expressed itself thus:

"The general rule is, that where general reputation is relied upon, it is not competent to give in evidence specific acts, either to sustain or to overthrow such general reputation. (*Bakeman* v. *Rose,* 14 Wend. 110; *Corning* v. *Corning,* 6 N. Y. 104.) * * * The defendant cannot be supposed to be prepared to prove the facts in regard to all cases which had theretofore occurred in his practice, and the inevitable effect of allowing such evidence would be to introduce before the jury a multitude of collateral issues, and thus tend to obscure and distract attention from the real issue in the case on trial. But when testimony as to general reputation is given by a witness, it seems to be agreed that on his cross-examination, and with a view to lessen the effect of his testimony as to general repute, or to show a bias in favor of the party who has called him, but not for the purpose of establishing the fact to be

proved, the witness may be asked whether he has not heard reports which tend to contradict the purport and effect of his testimony. (*Leonard* v. *Allen,* 11 Cush. [Mass.] 241.)"

This court, in the case of *State* v. *Campbell,* 20 Nev. 122, 17 Pac. 620, has intimated that in a case where the defendant was accused of rape it was proper on cross-examination of a witness testifying to the good character for chastity of the victim to interrogate as to particular acts of inchastity on her part. In respondent's brief we find a most painstaking and thorough consideration of the question, and we note as significant and directly applicable to the view we have taken in this case that respondent there asserts:

"The majority of courts, however, hold that a witness who has testified to the good character of the person may, for the purpose of testing his information and credibility, but not to establish the truth of such facts, be asked on cross-examination if he has not heard of the commission of particular acts by the party under investigation, or reports or rumors to that effect, inconsistent with the reputation attributed to him by the witness."

The decisions to which we have referred, supporting this very proposition, which we have attempted to analyze as applicable to the matter at bar, might be supplemented by many others: *Randall* v. *State,* 132 Ind. 539, 32 N. E. 305; *State* v. *Kimes,* 152 Iowa, 240, 132 N. W. 180; *State* v. *Killion,* 95 Kan. 371, 148 Pac. 643; *State v. Knapp,* 45 N. H. 148; *People* v. *Laudiero,* 192 N. Y. 304, 85 N. E. 132; *State* v. *Merriman,* 34 S. C. 16, 12 S. E. 619.

2. We are referred by respondent to the cases of *Davis* v. *Cook,* 14 Nev. 265, and *State* v. *Fronhofer,* 38 Nev. 448, 150 Pac. 846, as being applicable to the question under consideration. Those cases are cited to support the proposition that an interrogation propounded to a witness, which assumes the existence of a fact not in evidence, is not admissible. This rule is

fundamental, but has no application here, inasmuch as the fact in evidence by the character witnesses was the general reputation of the deceased, and the questions propounded by counsel for appellant were to test their knowledge of general reputation by inquiry as to their having heard of specific acts.

3. Respondent contends that under the rule laid down by this court in the case of *State* v. *Pearce,* 15 Nev. 191, the evidence sought to be elicited on cross-examination was not permissible. The cases in our judgment are not analogous. In the Pearce case the defendant, testifying in his own behalf, expressly declared that he fired the shots unintentionally. Here by the plea interposed by counsel for the defendant at the very opening of his case, as well as by the testimony of the defendant himself, justifiable homicide was expressly declared and relied upon. Moreover, the contention of respondent is interposed too late, inasmuch as the defendant was permitted by the trial court, and that without objection, to introduce evidence attacking the reputation of the deceased for peace and quiet even before defendant had testified to an overt act on the part of deceased or to his claim of justifiable homicide.

It is manifest that the trial court in this instance lost sight of that rule which, as supported by the authorities heretofore cited, distinguishes cases in homicide, where the character or reputation of the deceased is sought to be established by particular acts or instances, from cases like that at bar, where under the right of cross-examination the defendant, being confronted by witnesses who testified to the good reputation of the deceased for peace and quiet, seeks to test the knowledge and credibility of the witnesses by interrogating as to particular instances or particular acts from which such credibility or knowledge of general reputation may be weighed and considered.

4. We adhere to the rule, which we believe is fully supported by the great weight of authority, that the character or reputation of the deceased in homicide

cases is to be proven rather by evidence of general reputation of the deceased in the community in which he lived than by particular acts or instances which were not a part of the *res gestæ* nor connected therewith. (*Dupree* v. *State,* 33 Ala. 380, 73 Am. Dec. 422; *Andrews* v. *State,* 152 Ala. 16, 44 South. 696; *Campbell* v. *State,* 38 Ark. 498; *Croom* v. *State,* 90 Ga. 430, 17 S. E. 1003; *Thornton* v. *State,* 107 Ga. 683, 33 S. E. 673; *Andrews* v. *State,* 118 Ga. 1, 43 S. E. 852; *Pratt* v. *State,* 56 Ind. 179; *State v. Fontenot,* 50 La. Ann. 537, 23 South. 634, 69 Am. St. Rep. 455; *State* v. *Thompson,* 109 La. 296, 33 South. 320; *Jenkins* v. *State,* 80 Md. 72, 30 Atl. 566; *State* v. *Ronk,* 91 Minn. 419, 98 N. W. 334; *King* v. *State,* 65 Miss. 576, 5 South. 97, 7 Am. St. Rep. 681; *State* v. *Jones,* 134 Mo. 254, 35 S. W. 607; *People v. Rodawald,* 177 N. Y. 408, 70 N. E. 1; *Alexander* v. *Commonwealth,* 105 Pa. 1; *State* v. *Dill,* 48 S. C. 249, 26 S. E. 567; *State* v. *Andrews,* 73 S. C. 257, 53 S. E. 423; *Powers* v. *State,* 117 Tenn. 363, 97 S. W. 815; *Skaggs* v. *State,* 31 Tex. Cr. R. 563, 21 S. W. 257; *Darter* v. *State,* 39 Tex. Cr. R. 40, 44 S. W. 850; *Bybee* v. *State,* 47 S. W. 367; *Heffington* v. *State,* 41 Tex. Cr. R. 315, 54 S. W. 755; *Spangler v. State,* 41 Tex. Cr. R. 424, 55 S. W. 326.)

If there be an exception to this rule, and in isolated cases under peculiar circumstances we find courts holding in favor of an exception, it does not apply to the case at bar. But the general rule itself, as supported by the numerous authorities just cited, does not apply to the question under consideration. The right of the defendant to cross-examine the witnesses offered by the state to prove the good reputation of the deceased could not be maintained for the purpose of establishing the deceased's general reputation as being bad in the community in which he had resided. The interrogatories were proper and admissible solely for the purpose of testing the witnesses as to their veracity, trustworthiness and competency, and as to their knowledge of or acquaintance with the general reputation of the

deceased. Neither does the principle to which we adhere come under the general rule that when self-defense is an issue and it is necessary to show the state of mind of the slayer at the time of the commission of the offense, specific acts of violence of the deceased, which are then known to the slayer or have been communicated to him, which tend to show that the deceased was a violent and dangerous man, may be shown for the purpose of establishing self-defense.

The whole question here presented turns on the right of a party to interrogate on cross-examination as to matters properly within the scope of the examination in chief.

5. Was the error complained of one by reason of which the appellant was deprived of a substantial right? It is difficult to conceive of a right more substantial or important to one accused, where his life or his liberty may be the forfeit, than that of cross-examining witnesses whose testimony is adduced either to prove his guilt or to break down or destroy his defense. If we assert, as we are bound to do in conformity with the great line of authorities, that it was error for the trial court to deprive the appellant of the right to cross-examine character witnesses for the purpose of testing their veracity, their credibility, their fairness, or the scope of their knowledge as to such a vital matter as the reputation of the deceased for peace and quiet—if we say that though this was error yet it is not of such a serious nature as would require a reversal of the case, where shall we set the rule? Where shall we draw the line?

6. Respondent argues that the form of the questions propounded on cross-examination to the witnesses was not proper, and hence he cannot contend for the error assigned, but this was not embraced within the scope of the objection interposed by the prosecuting attorney in the trial court. Neither was this element considered by the trial court when ruling upon the question. The only ground upon which the objection was based and

upon which the court ruled was that such question was improper on cross-examination. We deem it proper to say in reply to the suggestion of respondent that in view of the matters to which the character witnesses for the state were permitted to testify, in view of the form of the answers permitted to stand in the record, the questions as propounded by counsel for defendant were not subject to an objection as to form.

The general reputation of the deceased was, by reason of the nature of the defense, an important element in the case, especially so after it had been assailed by the defendant. It was with a view to establish in the minds of the jury the belief that the deceased was the aggressor in the fatal affray that evidence assailing his reputation was permissible in the first instance. To destroy this belief and establish that the defendant was the aggressor, the state was permitted to produce witnesses as to the good reputation borne by the deceased. On this very phase—the justifiableness or unjustifiableness of the fatal blow—the guilt or innocence of the accused might turn. The testimony of the character witnesses going before the jury untested and unchallenged by legitimate cross-examination must be presumed to have had the effect of picturing to the jury the reputation of the deceased as being one noted for peace and quiet; hence tending to establish the belief that the defendant must have been the aggressor. What element in all the case was there more vital than this? If cross-interrogation of these character witnesses would show that they had formed their conclusion of good general reputation upon facts and general estimate which would not warrant such a conclusion, can it be said that the denial of the privilege to cross-examine as to such matters was not a deprivation of a substantial right?

Error is assigned in the giving of instruction No. 36, as follows:

"The jury are instructed: That partial variances in the testimony of different witnesses on minute and collateral points are of little importance, unless they be

of too prominent and striking a nature to be ascribed to mere inadvertence, inattention, or defect of memory. That it so rarely happens that witnesses of the same transaction perfectly and strictly agree on all points connected with it that an entire and complete coincidence in every particular so far from strengthening their credit not infrequently engenders suspicion of practice and concert. And in determining upon the credence to be given to testimony by the jury, the real question must always be whether the points of variance and discrepancy be of so strong and decisive a nature as to render it impossible, or at least difficult to attribute them to the ordinary sources of variance, namely, inattention or want of memory."

Even if the instruction contains a clause which might be considered as a comment by the court on the weight to be given to witnesses whose testimony might agree on all points, in view of the record we deem the matter of minor significance, and it is not to be presumed that the instruction in this form will be given again.

The judgment and order appealed from must be reversed.

It is so ordered.