## No. 12,737.

### STATE OF LOUISIANA VS. USEBE FONTENOT.

The testimony of the dangerous character of the deceased when admissible in support of self-defence urged by the accused must be restricted to the general reputation of the deceased for peace and quietness; hence, testimony of particular acts of violence of the deceased are properly excluded.  3 Rice on Evidence, Secs. 482, 476.

Nor can the State be deemed to have opened the door for the admission of testimony of such particular acts of violence, merely because on re-examination the witness who has testified to such acts on cross-examination is asked by the prosecuting officer "if he had ever heard the deceased had hurt anybody."  1 Greenleaf, Sec. 468.

Instructions requested which by implication assume that the accused had established his defence are properly refused.

The opinion of a witness whether the cuts in the clothing of the deceased indicated he had been stabbed while erect confronting the accused, or when he had fallen in the arms of the testifying witness, can not be deemed expert testimony.

When the charge is full as to the law of self-defence instructing as to the danger to life or limb that will justify killing; the obligation of the party assailed to retreat; when retreat is not required and as to the other phases of the law deemed pertinent, the verdict of the jury will not be set aside because of the refusal of special charges covered by the general charge.  10 An. 264; 37 An. 77; 35 An. 970; 38 An 206.

APPEAL from the Eleventh Judicial District Court for the Parish of Acadia.  *Dupré, J.*

---

*M. J. Cunningham*, Attorney General, and *R. Lee Garland*, District Attorney, for Plaintiff, Appellee.

---

*W. C. Perrault*, *E. P. Veazie* and *P. S. Pugh* for Defendant, Appellant.

Submitted on briefs April 9, 1898.
Opinion handed down May 16, 1898.

---

The opinion of the court was delivered by

MILLER, J.   The accused, sentenced for life imprisonment for murder, takes this appeal.

A number of bills of exception reserved on behalf of the accused are to the exclusion of questions seeking testimony of the character of the deceased for peace and quietness.   It seems to be conceded that under the circumstances detailed in the bills testimony was admissible on behalf of the accused that the deceased was of violent character, but the discussion in this court is as to form of the questions propounded on this subject.   We think it clear that when in support of self-defence by the accused indicted for murder, the law permits testimony impugning the character of the deceased for peace and quietness, the testimony must be confined to his general reputation in that respect.   3 Rice on Evidence, Secs. 482, 476.   An examination of the questions under discussion show the purpose to elicit testimony of previous difficulties of the deceased; of violence displayed by him in saloons, and relating to other acts of the accused claimed to be pertinent on the issue of his character for peace and quietness.   But on that issue it is not competent to give in evidence particular acts of the deceased.   3 Rice Ibid.   It is insisted the State had opened the way for such proof.   The State had not sought to put any questions touching the character of the deceased, least of all referring to the particular acts the subjects of the questions propounded on behalf of accused.   The questions as to particular acts were put to the witnesses for the State on their cross-examination.   On their re-examination on the point thus introduced by the defence on cross-examination, the District Attorney asked the witnesses who had testified to the dangerous character of the deceased, whether they had "ever heard that deceased harmed any one."   We do not understand that this question to, which the District Attorney confined himself, on the issue of the character of the deceased assailed by the defence, transcended the limit allowed him in re-examining witnesses on a point brought out on cross-examination, or entitled the defence to prove particular acts of violence on the part of the deceased.   Nor can we perceive that the testimony of such acts were admissible, because of the

proof of the exclamation of the deceased to accused "you have stabbed me." Therefore, in our view, the lower court did not err in excluding the testimony proposed to be given of such acts, and in confining the defence to proof of the general character of the deceased for peace and quietness.

Another bill reserved by the accused is to the exclusion of questions put to a witness who had examined the clothes worn by the deceased when he was killed, the opinion of the witness being sought whether from that examination the cuts exhibited by the clothing were received while the deceased was erect or reclining. The testimony of the State tended to show that the deceased giving the first blow was shoved by the accused, fell back in the arms of one of the testifying witnesses, and, while the deceased was in that position, was stabbed by the accused. It is claimed in the argument for the accused that the cuts in the clothes would have been higher if received when the accused had fallen back, than the cuts would have been if the cuts had been received while the deceased was erect confronting the accused. It was proper for the witness to have described the cuts in the clothing from which the jury could have drawn any inference, the cuts might be deemed to indicate. But the subject, in our view, was not one in reference to which expert testimony was admissible, and hence there was no error in excluding the opinion of the witness. There is another bill reserved to the statement of one of the witnesses substantially, that the accused and deceased were angry, elicited by the question whether they were angry or cool and collected. We think the question referred to the fact, i. e., condition of the combatants, and not to the opinion of the witness, and question and answer were unobjectionable.

There are bills in the record to the refusal of certain requested charges. One instruction required the definition of the overt act of hostility by the deceased to be considered in connection with self-defence urged by the accused. The instruction asked was, that the overt act was a hostile demonstration of a character to create belief of the accused he was about to lose his life or suffer great bodily harm at the hands of deceased, and this belief could have been entertained honestly by accused, though deceased did not strike or come within striking distance of the accused. The Court had charged fully on the law of self-defence and in the course of which had stated, in effect, "to justify killing the accused must have been

in real or apparent danger existing at the time of the killing, the killing must have been absolutely or apparently necessary to protect the life or limbs of the deceased, and further the court instructed that by imminent danger was meant such overt actual demonstration as makes killing necessary to self-preservation; that it was not necessary danger should, in fact, exist, but such actual danger as it might appear to defendant's comprehension as a reasonable man, and the apprehension of danger by the accused must be on grounds sufficient to satisfy a reasonable man his life or limbs were in peril or great bodily harm was about to be inflicted on him, or in other words, the trial judge put it, that the killing was the *bona fide* attempt to protect the accused from impending danger." Between the charge asked substantially, that the overt act of hostility to justify killing must be of a character to impress accused he was about to lose his life or suffer great bodily harm, and that given by the court, we think there is a difference only of language, not of substance, and in another part of the charge the instruction given was that to constitute self-defence the actual striking of the blow is not requisite, nor that the assailant should be in striking distance.

We are informed by the bills that the deceased and the accused became involved in a quarrel over a game of cards in a saloon; the deceased giving the first blow the accused was shoved back against the wall; that in turn accused shoved deceased, who fell backward in the arms of one of the testifying witnesses, and the testimony, it is claimed, tends to show that in that position the deceased was stabbed by the accused, the deceased exclaiming at the moment, calling the accused by name: "You have stabbed me." The bills show there was testimony that deceased was of superior strength and size, that he was of dangerous character; that the saloon, the scene of the difficulty, had but one door, that opening into the front room, and the testimony, it is claimed, tended to show the way to the door was obstructed.

In this condition of the proof the charge of the Court presented the law of self-defence, and dealt with particularly on the phase of the excuse for the mortal stab, when from the nature of the attack the life or limbs of the party assaulted is endangered, and when retreat is impracticable, or would add to that danger. On behalf of the accused the special charge was asked substantially, that proof of the disparity of size and strength of the deceased and the

accused, and of the dangerous character of the deceased, can only be offered when the *prima facie* case of self-defence is made, and after it has been shown the deceased was the attacking party. And that "proof of the size and strength of the two men tended to show the dangerous character of the deceased had been offered." The instruction requested, in our view, carried the implication the accused had made a case of self defence, and we think was properly refused. On behalf of the accused the charges were also requested in substance, that a person free from fault, assaulted by another, who manifests his purpose by violence to take the life of the party assaulted, or to do him great bodily harm, and no retreat on his part is practicable, then the assaulted party is not obliged to retreat, but may pursue his adversary until secured from danger, and if he kill the adversary in so doing, the killing is self defence. Again, the charge was requested that "knowledge by the accused that deceased was violent, dangerous and vindictive and of superior strength was sufficient to form the well-grounded belief of the accused of imminent danger of his life or of great bodily harm, and will excuse killing when, superadded to such knowledge, he is assailed and when the deceased shows an intent to take the life of the accused or subject him to great bodily harm;" and again, there was asked on behalf of the accused, the charge in substance, that even if the deceased did not intend to take the life of the accused, but only to beat him, yet if the beating was of a character to imperil life or limb, accused was justified in killing the deceased. Some portions of these requested charges, we think, manifestly deal with the effect of the proof stated to have been administered, and of that effect the jury and not the Court was to determine. A careful examination of the charge of the court brings us to the conclusion the law of self-defence was fully given. Thus the Court had instructed "that a person suddenly assaulted and in imminent danger of life or great bodily harm, and where such imminent danger would be the apparent consequence of waiting for the assistance of the law and with no practicable means of escape, kills the assailant, the killing would be self-defence, and therefore, if the slayer was closely pressed by the deceased, retreated as far as he could conveniently or safely in good faith with the honest intent to avoid the violent assault, and believing himself in imminent danger of his life or great bodily harm, kills assailant, the killing is excusable homicide." The Court further

instructed that a person need not avoid danger by flight, if not the "provoker" or aggressor, if in fault he is bound to retreat as far as practicable consistently with his own safety, unless prevented by the fierceness of the assault, when if to save his life he kills his adversary the killing is excusable homicide; that in case of personal conflict to justify homicide it must appear the party killing had retreated as far as he could, or as far as the fierceness of the attack permitted, but that retreat was not required, where one stands on his own right nor where retreat would add to his danger," and the court continued on the same line its instruction as to self-defence. The charge as given was not excepted to, and in our view it substantially gives the law on the subject. 1 Archbold, 225; State vs. Chandler, 5 An. 489. The requested charges present the law in different language, but the Court is not required to instruct in the frame prepared by the counselt for the accused, nor repeat charges already in effect given. State vs. Roberts, 10 An. 264; State vs. Melton, 37 An. 77; State vs. Garic, 35 An. 970; State vs. Boasso, 38 An. 206. We can find no error in the refusal to instruct as requested on behalf of the accused.

The bill to the refusal to charge that whether a man is threatened with imminent danger he alone must determine *the necessity* of self-defence, we think too broad. The law is there must have been reasonable ground to believe the life of the person assailed is in danger or great bodily harm threatened, with other qualifications unnecessary to be stated, to justify the killing of the assailant. 1 Archbold, 225; State vs. Chandler, 5 An. 489.

Our attention has not been directed to that part of the charge respecting malice deemed objectionable. The special charge asked on that point, we think fully covered by the general charge, and no insufficiency in it is pointed out to render special instructions requisite, nor does our examination discover any such necessarily.

It is therefore ordered, adjudged and decreed that the sentence of the lower court be affirmed.