## Molphus *v.* State.

[87 South. 113, No. 21375.]

1. CRIMINAL LAW. *Witnesses. Instruction that jury must accept evidence of threats as true properly refused; rule as to disregarding testimony of witness swearing falsely applies to defendant's witnesses.*

   The jury being the sole judge of the credibility of the witness, it is not error for the court to refuse to instruct them that they must accept as true evidence as to threats. This is especially true where the witness testifying to threats are contradicted as to other material facts in evidence.

2. CRIMINAL LAW. *Homicide. Instruction as to right of defendant to carry concealed weapon properly refused.*

   In the trial of a person for the killing of a human being, the lawfulness of carrying a weapon concealed is not involved, and the court may refuse to instruct the jury that, if threats were made against the accused, he had a right to carry concealed the weapon with which the killing was done. In such case, where the accused has gotten an instruction in general terms that he has such right in such case, it is not error to refuse an instruction applying to the concrete facts of the case.

3. HOMICIDE. *Person whose life has been threatened cannot kill unless there is demonstration inducing reasonable man to believe*

*that there is danger; instruction that there is right to kill on
first appearance 'of danger properly refused.*

It is not error for the court to refuse to instruct the jury for the
defendant that, where a person's life had been threatened by
another, the person whose life was threatened had a right to
kill on the first appearance of danger, provided he reasonably
believed at the time of the killing there was imminent danger
of losing his life, and this is especially true where the court has
given the law in charge as to apparent danger and as to the
right to act on appearances where threats had been made.

4. Homicide. *Instruction that to justify shooting on apprehension of
threats deceased must have made overt act is proper.*

Where a person is on trial for a homicide and relies upon threats
made and communicated to him as justifying the killing on the
theory of apparent danger, it is not error to instruct, at the re-
quest of the State, that to justify a shooting on apprehension of
threats the deceased must have made some overt act toward
accused.

5. Criminal Law. *Defendant's overtures for peace inadmissible when
made long before killling.*

Evidence of overtures for peace made by the defendant prior to
and not connected with the killing, but made so long prior there-
to as not to be in effect a part of the transaction terminating
in the homicide, are not admissible in evidence. Such overtures
are not admissible unless they be either a part of the *res gestae*
or so closely related to the time of the killing as to make it
practically a part of the killing.

Appeal from circuit court of Neshoba county.

Hon. A. J. McLaurin, Judge.

Pet Molphus was convicted of murder, and he appeals.
Affirmed.

*Earl Richardson, M. W. Reily, Paul Dees, Clayton D.
Potter* and *Robert B. Mayes,* for appellant.

The whole question to be determined by the jury in this
case was who was the aggressor in this difficulty and it
was certainly a material fact in appellant's favor that he
made overtures for peace and that these overtures were
rejected by Mr. Owen.

Under the circumstances, we contend that it was very important and material to appellant's case to show that he had made overtures for peace, and that he had done his best to avoid trouble. Not only is this rational, but this same view is supported by all the authority on the subject. 21 Cyc., page 899; *Shaver* v. *State of Texas,* 60 S. W. 249; *Everett* v. *Taylor,* 30 Texas App. 682, 18 S. W. 674; *Butler* v. *Texas,* 33 Texas App. 233, 26 S. W. 20, 58 S. W. 107.

The court erred in refusing instruction No. 3 asked for by the appellant. That instruction is as follows: "The court instructs the jury for the defendant that the jury should accept as an established fact that Mr. Owen threatened the life of the defendant and that the defendant was advised of the threats made by Mr. Owen."

To the extent that the appellee had threatened the life of the defendant, the defendant's case was absolutely established, and to that extent he was entitled to the peremptory instruction. The court also was in error in refusing instruction No. 2, which is as follows: "The court instructs the jury for the defendant that the defendant had a right to carry a pistol to protect himself from loss of life or great bodily harm at the hands of Mr. Owen, providing the jury believe that the defendant reasonably believed that there was danger of such threats being executed."

It is true that the defendant received the following instruction: "The court charges the jury at the request of the defendant that under the law a man is justifiable in carrying a concealed weapon if his life has been threatened and he has a good and sufficient reason to apprehend a serious attack from an enemy, and if you believe from the testimony in this case that Molphus' life had been threatened and he had reasons to apprehend a serious attack, then he was justified in carrying a pistol."

But the appellant in this case had a right to an instruction with reference to the concrete facts in the case, and we submit that the instruction given is couched in such

general terms that the error in refusing to give the instruction above set out is not cured by the granting of the general instruction.

The court erred in refusing the appellant the following instruction. "The court instructs the jury for the defendant that when a man threatens the life of another, he puts himself in a position where he whose life has been threatened has the right to kill him upon the first appearance of danger providing the party threatened reasonably believed at the time of the killing that there was eminent danger of his losing his life at the hands of him who has threatened him, and in deciding whether the party threatened so reasonably believed, the jury should consider the fact that his life had been threatened."

The above instruction is a correct announcement of the law and on a very important point for the appellant, and is not covered by any other instruction in the case. *Fortenberry* v. *State,* 55 Miss. 409.

The sixth instruction for the state as shown in the amended record in this case, and generally agreed upon as correct by both the district attorney, the county attorney on one side, and the attorneys for Pet Molphus on the other, was as follows: "The court charges the jury for the state that mere threats alone will not justify one person in taking the life of another, even though the jury may believe from the evidence that deceased threatened the life of defendant, Pet Molphus, and that the threats were communicated to him, this alone would not justify the defendant in taking the life of deceased, unless you further believe from the evidence that at the time defendant shot the deceased he, the deceased, was making some overt act toward defendant."

This instruction tells the jury that unless they believe from the evidence that at the time the defendant shot the deceased, he, the deceased, was making some overt act toward the defendant, that mere threats, etc., would not justify one person in taking the life of another. This instruction is incorrect because the meaning of overt act as

known in the criminal law is some demonstration or open act done in pursuance of a criminal design. Webster's International Dictionary defines an overt act, as follows: "In criminal law an overt act is an open act done in pursuance and manifestation of a criminal design."

Pope's Legal Definition and Black's Legal Definition both give the definition of an overt act as follows: "An overt act in criminal law is an open act from which criminality can be implied, citing *People* v. *Bloomenberry,* 199 Ill. App. 128. An overt act is one done to carry out the intention and it must be such as would naturally affect that result unless prevented by some extraneous cause. *People* v. *Mills,* 66 L. R. A. 136.

The whole idea of an overt act, or an open act, as known in the criminal law, is some open act in furtherance of some preconceived criminal design. In this case it is true that if the jury believed that the deceased made an overt act, that is, had attempted by some open act to carry out his threat, that the defendant should have been acquitted, but on the other hand, mere threats are not sufficient alone to justify an acquittal, yet, nevertheless the threats having been made and the appellant's mind in such state that he feared the deceased, the jury might have believed that he had a reasonable apprehension of great bodily harm, even if the deceased had only thrown his hand back to get a handkerchief, or for some other innocent purpose. If the decedent had innocently thrown his hand back to his pocket in order to get his handkerchief or some other article, or if he had thrown his hand back of him in an effort to rise from the floor on which he was sitting, under the circumstances in this case the jury might have inferred that the appellant in this case reasonably believed these innocent acts on the part of the deceased were hostile demonstrations. Yet it is not an overt act as shown in the criminal law for one to throw his hand behind him without a guilty purpose. The giving of this instruction took away from the jury the right to consider the reason-

ableness of appellant's apprehension that he was in great danger.

It may be answered, however, that this instruction is cured by other instructions in the case, but it is a well-settled rule of law that where an instruction attempts to set out the facts and to state that, on the facts stated, certain legal conclusions will follow, such instructions are not cured by other instructions correctly stating the law, but the jury being instructed two different ways as to what facts constitute the case at law, are thereby made the judges of the law, and under our system of laws the jury is the trier of facts and not of law. It is true that where abstract principles of law are laid down in instructions and necessarily parts omitted in one instruction but supplied in another, that the instructions correctly stating the law are declared correct notwithstanding the fact that a particular instruction may not be full enough, but this is not so where an instruction attempts to set out the concrete facts and to evolve a legal conclusion therefrom. *Harper* v. *State,* 83 Miss. 418; *Hawthorne* v. *State,* 59 Miss 778; *Collins* v. *State,* 71 Miss. 691, 15 So. 42; *Josephine* v. *State,* 39 Miss. 647; *Owens* v. *State,* 80 Miss. 499, 32 So. 152.

In this case the jury were told in substance that unless the deceased was attempting to carry out his threat to kill the appellant, that he was not justified in taking the life of the deceased, and this is not the case because after all the threats had been made, the jury might have determined under proper instructions that an innocent act, such as throwing his hand back of him in reaching for a handkerchief, or throwing it back to arise from the floor on which he was, sitting, caused the appellant to have a reasonable apprehension that his life was in great danger and to justify under the circumstances the killing.

*H. Cassedy Holden,* Special Assistant Attorney-General, for the state.

No Error in Refusal of Instructions. The appellant complains that the court erred in refusing each and everyone of the instructions asked by the defendant and marked refused, but particularly the following instruction: "The court instructs the jury for the defendant that the jury should accept as an established fact that Mr. Owen threatened the life of the defendant and that the defendant was advised of the threats made by Mr. Owen."

The court committed no error in refusing to grant this instruction. The jury had the right to reject all the testimony as to threats and to disbelieve it if they saw fit to do so. It is true that testimony as to threats was admitted and was uncontroverted. Nevertheless it was within the province of the jury to weigh this testimony and to believe it or disbelieve it. The trial court is not empowered to take from the jury this right to pass upon the credibility of witnesses.

But even had this instruction been granted by the court, it would have had no effect upon the jury in view of the fact that fully sufficient instructions had already been granted the defendant giving him the benefit of the fact that threats had been made against his life. See record pages 164, 167, and 168. The defendant suffers no prejudice by reason of the refusal of this instruction, and therefore under rule 11 of this court a reversal cannot be based on this ground. *Flowers* v. *State,* 101 Miss. 108, 57 So. 226; *Jones* v. *State,* 104 Miss. 871, 61 So. 979; *Thomas* v. *State,* 103 Miss. 800, 60 So. 781.

Appellant further complains of the refusal of the court to grant the following instruction for the defendant: "The court instructs the jury for the defendant that the defendant had the right to carry a pistol to protect himself from loss of life or great bodily harm at the hands of Mr. Owen providing the jury believes that the defendant reasonably believed that there was danger of such threats being executed."

The court committed no error in refusing this instruction. In the first place the instruction is poorly drawn

as will be seen readily by a reading of same. Moreover, no complaint can be predicated of the refusal of this instruction because of the fact that almost an identical instruction was given for the defendant and appears in the record at page 167.

Where the instructions as a whole fairly state the law applicable to the case and to the defense of accused, there will be no reversal. *Smith* v. *State*, 107 Miss. 486, 65 So. 564; *Davis* v. *State*, 108 Miss. 710, 67 So. 179. The court is not required to charge where the principle announced has already been stated in other instructions. *Mathews* v. *State*, 108 Miss. 726, 67 So. 181.

The appellant further complains of the refusal of the court to grant the following instruction for the defendant. "The court instructs the jury for the defendant, that when a man threatens the life of another he puts himself in a position where he whose life has been threatened has a right to kill him upon the first appearance of danger providing the party threatened, reasonably believed at the time of the killing, that there was imminent danger of his losing his life at the hands of him who has threatened him, and in deciding whether the party threatened so reasonably believed, the jury should consider the fact that his life had been threatened."

The court committed no error in refusing this instruction. In the first place the instruction is poorly drawn and calculated to cause confusion in the minds of the jury. Moreover, no successful objection can be made to this instruction by reason of the fact that the benefit sought to be obtained therein had already been stated to the jury in the instruction for the defendant which appears at page 164, and the instruction which appears at page 168 of the record. The defendant asks for three instructions on self-defense which would give him the benefit of threats made by the deceased; the court simply selected two of these instructions as being the best drawn and the most correct in their statement of the law. The court rejected the instruction covering the same proposition which was not

skillfully drawn and was not clear in its statement of the law. To have granted a third instruction on the same question and the same principle of law would have been merely accumulative and superfluous, and moreover, may have caused confusion in the minds of the jury. *Mathews* v. *State, supra; Holliday* v. *State, supra.*

No Error in Instructions for the State. The appellant complains of the granting of the following instruction for the state: "The court charges the jury for the state that mere threats alone will not justify one person in taking the life of another, even though the jury may believe from the evidence that deceased threatened the life of defendant, Pet Molphus, and that the threats were communicated to him; this alone would not justify the defendant in taking the life of the deceased, unless you further believe from the evidence that at the time defendant shot the deceased he, the deceased, was making some overt act toward the defendant.

No error was committed by the court in granting this instruction for the state. This instruction announced the law correctly, beyond all question.

The mere fear or apprehension, arising from previous threats communicated, offers no excuse unless at the time of killing an effort was being made to put the threats into execution and where the apparent necessity existed at the time to slay, in order to save the life of the slayer. *Head* v. *State,* 44 Miss. 731. Threats, however, deliberately made, do not alone justify the taking of the life of the party making them. *Evans* v. *State,* 44 Miss. 762.

In order to justify a killing on the grounds of self-defense, there must be some overt act, indicating a present intention to kill the party, or do him some great personal injury, and the danger of such design being accomplished must be imminent, that is, immediate, pressing and unavoidable at the time of the killing. Mere fears of the design to commit a felony or to do some great personal injury, though honestly entertained by the slayer, accompanied by no overt act, indicating a design immediately to commit the felony, or to do the injury, will not justify the

killing. *Dyson* v. *State*, 26 Miss. 362; *Wesley* v. *State*, 37 Miss. 327; *Green* v. *State*, 28 Miss. 687; *Jefferson* v. *State*, 52 Miss. 767; *Parker* v. *State*, 55 Miss. 414; *Hendrick* v. *State*, 55 Miss. 436.

To justify homicide on the plea of self-defense there must be something shown in the conduct of deceased indicating a present intention to kill, or to do some great personal injury to the slayer, and immediate danger of such intention being accomplished, mere fears or belief are insufficient. The slayer may act upon appearances, but they must indicate danger. The danger may be either real or apparent. *Scott* v. *State*, 56 Miss. 287; *Parker* v. *State*, 55 Miss. 414; *Long* v. *State*, 52 Miss. 23; *Jackson* v. *State*, 79 Miss. 42, 30 So. 39; *Blalack* v. *State*, 72 Miss. 517, 31 So. 105; 21 Cyc., 814.

No Error in Exclusion of Evidence. The appellant complains of the action of the court in excluding certain testimony of the defendant which appears at page 88 of the record. The court committed no error in refusing to admit this testimony. Threats of the deceased of recent date, and communicated to the defendant, are admissible in evidence as being relevant to the question whether defendant had reasonable cause to apprehend an attack fatal to life or fraught with danger to him of great bodily harm, but the details of the transaction and relations surrounding such threats cannot be entered into.

When the fact of homicide is admitted or established by the evidence, circumstances showing the temper and conduct of the parties and illustrating their feelings toward each other previous to the fatal meeting are admissible in evidence as tending to throw light on the question of malice and intent; but it is not proper to go into the details of their quarrels and bickerings for the purpose of showing who was at fault, or to admit evidence of remote difficulties in no way connected with the fatal encounter. 21 Cyc., 895.

The relations between the defendant and the deceased immediately prior to the killing are admissible and rele-

vant. But proof as to quarrels, altercations and hostile acts must not relate to a time too remote from that of the fatal encounter. 13 R. C. L., paragraph 216; 21 Cyc. 894.

The relations between the defendant and the deceased immediately prior to the killing are idmissible and relevant. But proof as to quarrels, altercations and hostile acts must not relate to a time too remote from that of the fatal encounter. 13 R. C. L., paragraph 216, 21 Cyc. 894; *Webb* v. *State*, 73 Miss. 456, 19 So. 238; *Story* v. *State*, 68 Miss. 609, 10 So. 47; *Herman* v. *State*, 75 Miss. 340, 22 So. 873; *Thompson* v. *State*, 84 Miss. 758, 36 So. 389; *McCoy* v. *State*, 91 Miss. 257, 44 So. 814.

The defendant received a fair and impartial trial. There were no errors committed by the court in the conduct of the trial. Except for the testimony of the defendant himself, this record reveals the story of a deliberate, cool, and studied assassination. And yet the penalty is only life imprisonment. The case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Pet Molphus was indicted, tried, and convicted for the murder of Robert Owen, and sentenced to the penitentiary for his natural life, and appeals from such judgment and assigns for error the following: First, the court erred in refusing each and every one of appellant's instructions found in the record marked refused; second, the court erred in granting each and every instruction received by the state, and especially instruction No. 6 by the state; third, the court erred in excluding the evidence offered by the appellant on objection by the state, and especially when the appellant offered to show overtures for peace made by him to the deceased. The killing took place on the gallery of Land's store about ten miles east of Philadelphia, Miss., in Neshoba county, and was witnessed by two eyewitnesses from the beginning, and by another from the first shot.

In front of this store was situated mail boxes on a rural route at which both Molphus and Owen received their mail and mailed letters and packages. ' According to the state's witnesses the deceased was sitting at the corner of the store at the intersection of the south and east galleries. He had a letter in his right hand and was looking downward, and Molphus approached from the rear end of the east gallery to within a few feet of where Owen was sitting saw his position, and began to fire without the utterance of a word and at a time when the deceased was making no demonstration toward him or looking at him. Six shots were fired, all taking effect, one striking the head below the left ear and ranging downward into the neck, one entering the left shoulder and ranging down, one about midway of the upper arm, and one about the elbow, and one in the left side. Owen never made any demonstration, according to the state's witnesses, and never uttered a word except to cry out, "Oh! Oh!" or some similar utterance. When Molphus finished shooting he walked off of the gallery, crossed the road, and called back to Jones, a state's witness, to phone for the sheriff, that he would give up, and returned to his home through the pasture of Mrs. Ford. Jones had some one to phone the sheriff and then went to a neighbor's, leaving Owen undisturbed as he fell. When the neighbors came in they straightened Mr. Owen out, searched his person, and found a pocketknife in his pocket, a watch, twenty-five cents, and a box addressed to the state laboratory at Jackson, Miss. The letter was still in his right hand.

Molphus testified in his own behalf, and testified to previous difficulties with the deceased and that threats had been communicated to him made by the deceased, and states that when he walked up on the gallery and got near Owen, Owen started to rise and threw his right hand toward his hip pocket, and that he (Molphus) thereupon fired upon Mr. Owen as long as the pistol would shoot to save his own life. He introduced several witnesses to prove the threats made by Mr. Owen against him and

communicated to him, ranging as far back as January, 1918, the shooting taking place in June, 1918, said threats continuing up to about two weeks before the killing. Some of these witnesses testifying to threats made by Mr. Owen against Molphus were contradicted by members of Ford's family as to their presence at the place, Ford's home, where the alleged threats were made. They also testified to some other threats not made at Ford's residence and at which only the witnesses and Owen were present. Molphus also offered to prove that he had made overtures to Mr. Owen for a settlement of their differences on a peaceable basis, having sent a committee of neighbors to induce Mr. Owen, if possible, to drop their ill feeling and to live as neighbors, and, if he would not agree to that, to make a proposition of having a committee of neighbors to value the property of Molphus and of Owen, and that he (Molphus) would either sell or buy on such valuations, giving Mr. Owen the option first to buy or sell at such valuations.

The evidence offered in the absence of the jury shows one or more committees approached Mr. Owen with such propositions, which he rejected. Evidence of threats made by Mr. Owen at such times against Molphus was admitted by the court, but the court excluded the overtures of peace made by the committee, to which exception was taken.

Taking up the first assignment of error: The appellant first says that the court erred in refusing instruction No. 3 asked for by the appellant and refused by the court, which reads as follows:

"The court instructs the jury for the defendant that the jury should accept as an established fact that Mr. Owen threatened the life of the defendant, and that the defendant was advised of threats made by Mr. Owen."

We do not think that the court was required to instruct the jury that they must accept the evidence of the witness as to the threats as being true. These witnesses, with one exception, were contradicted as to some of the threats, and the defendant invoked the principle of law in his instruction that, if the jury believed from the evi-

dence that any witness had willfully and corruptly sworn falsely as to any material matter, the jury were authorized to disregard the testimony of such witness or witnesses. The credibility of the evidence is for the jury, and this principle of law invoked by the defendant operates as to his own witnesses as well as to the witnesses of the state. There is a direct conflict between these witnesses and other witnesses for the state as to other matters in issue, and the jury may have believed that such witnesses were testifying falsely, and, if they did so believe from the evidence and from the manner and appearance of the witnesses, they were authorized to disbelieve their statements.

It is next complained that the court erred in refusing instruction No. 2 for the appellant, which reads as follows:

"The court instructs the jury for the defendant that the defendant had a right to carry a pistol to protect himself from loss of life or great bodily harm at the hands of Mr. Owen, providing the jury believe that the defendant reasonably believed that there was danger of such threats' being executed."

The court gave the defendant the following instruction:

"The court charges the jury at the request of the defendant that under the law a man is justifiable in carrying a concealed weapon if his life has been threatened and he has a good and sufficient reason to apprehend a serious attack from an enemy, and if you believe from the testimony in this case that Molphus' life had been threatened and he had reason to apprehend a serious attack, then he was justified in carrying a pistol."

This instruction received by the defendant was certainly all he could ask. The defendant was not on trial for carrying a concealed weapon, and the court was not required to instruct as to his right to carry a weapon. The court was here dealing with the use of the weapon and the lawfulness of the use, and not with the lawfulness of its being carried. So we think there was not error in re-

fusing the instruction No. 2 above set out which was refused by the court.

It is next complained that the court erred in refusing the appellant the following instruction:

"The court instructs the jury for the defendant that when a man threatens the life of another he puts himself in a position where he whose life has been threatened has the right to kill him upon the first appearance of danger, providing the party threatened reasonably believe at the time of the killing that there was imminent danger of his losing his life at the hands of him who has threatened him, and in deciding whether the party threatened so reasonably believed the jury should consider the fact that his life had been threatened."

It is not true that a party has a right to kill another on the first appearance of danger. The rule is that to defend on alleged threats and apprehension on threats there must be a demonstration by the party making the threat which would induce a reasonable man to believe that there was danger of such threat being immediately executed.

It is urged here that the appellant need not wait until his adversary was on equal terms before he commenced firing; and while it is true that he need not wait until his adversary is on equal terms before firing, yet it is true that his adversary must make some demonstration or overt act upon which a reasonable belief of danger might be predicated. The instruction does not sufficiently state this hypothesis, and the instructions for the defendant given by the court fully informed the jury of his right to act upon the apparent danger, and also their right to consider the threat made, if they believed that such threat was made.

On the second assignment of error it is insisted, first, that the court erred in granting instruction No. 6 given to the state, which reads as follows:

"The court charges the jury for the state that mere threats alone will not justify one person in taking the life of another; even though the jury believe from the

evidence that deceased threatened the life of the defend-
ant, Pet Molphus, and that the threats were communicated
to him, this alone would not justify the defendant in tak-
ing the life of deceased, unless you further believe from
the evidence that at the time defendant shot the deceased
he, the deceased, was making some overt act toward the
defendant."

It is contended here that the words "overt act" as known
in the criminal law is some demonstration or open act
done in pursuance of a criminal design, and it is insisted
that the act in itself may have been innocent and yet the
defendant may have rightly apprehended danger because
of the threat.

In *Hood* v. *State,* 27 So. 643, the appellant was refused
an instruction which was in the following language:

"That the design, real or apparent, to kill the defend-
ant or to do him some great personal injury, and the
danger, real or apparent, of the execution of such design
by the deceased to cause the killing, must be manifested
by some overt act, conduct, or behavior of the deceased
at the time of the killing, indicating to the defendant,
Hood, situated as he was, such design and danger; but
what show such design, real or apparent, or such danger,
real or apparent, are not matters of law for the court to
decide, but are matters of fact, determined by the jury
according to all the evidence in the case. No exact defini-
tion of an 'overt act' can be given. It may be a motion,
a gesture, conduct, or demonstration, or anything else
which evidences reasonably a present design to take the
life of the defendant or to do him great bodily harm.
Trifles light as air when viewed alone may become fraught
with deadly meaning when viewed in connection with all
the preceding facts disclosed, and with all the evidence
in the case."

And the court in passing upon the case held that this
instruction was proper. It will be seen from this in-
struction that the language:

"No exact definition of an 'overt act' can be given. It may be a motion, a gesture, conduct, or demonstration, or anything else which evidences reasonably a present design to take the life of the defendant or to do him great bodily harm. Trifles light as air when viewed alone may become fraught with deadly meaning when viewed in connection with all the preceding facts disclosed, and with all the evidence in the case"—indicates that the words "overt act" as used in this instruction do not indicate that the overt act must be for a criminal purpose.

In the case of *State* v. *Williams,* 46 La. Ann. 709, 15 So. 82, it is said:

"The mere fact of going to the place where the accused lived and seeking an explanation from him does not in itself constitute such an act of hostility as would justify the taking of human life. In order to constitute the overt act or hostile demonstration that would justify the taking of human life, there must be some demonstration made by deceased against accused as to impress upon the latter that he was in imminent danger of his life, or some great bodily harm.

"In some instances the extent of the overt act which would induce the accused to act in his self-defense is measured by the character of the deceased for a violent, quarrelsome, dangerous, and turbulent disposition, notorious in the community or known to the accused."

In Words and Phrases (O. S.) vol. 6, p. 5128, we find the following definition of the words "overt act":

"The overt act of the deceased justifying another person in the exercise of the right of self-defense is a hostile demonstration of a character to create a belief in such person that he was about to lose his life or suffer great bodily harm at the hands of the deceased; and this belief could have been entertained honestly by accused, though deceased did not strike, or come within striking distance of him. *State* v. *Frontenot,* 23 So. 634, 635, 50 La. 537, 69 Am. St. Rep. 455."

We do not think the jury were misled by this instruction as to the appellant's right to act upon the demonstration considered in the light of the evidence as to threats. The instructions in the case given on behalf of the defendant, we think, informed the jury fully as to the extent of his right under the law, and there is no reversible error in the instruction.

The third assignment of error is the one principally relied upon by the appellant for a reversal. It is earnestly insisted that the overtures of peace made by the appellant to Mr. Owen should have been admitted to the jury. There is some authority to the effect that this may be considered in determining the question of malice as bearing on the state of mind of the defendant at the time, but the rule is that such overtures or efforts of peace are not admissible unless it is so intimately connected with the killing as to indicate the state of the defendant's mind at the time of the homicide. It must either be a part of the *res gestae* or so closely related to the time of the killing as to make it practically a part of the transaction. The rule stated in Enc. of Evidence, vol 6, pp. 763, 764, is as follows:

"The defendant's previous expressions of his fear of the deceased and his desire to avoid a difficulty with him are not admissible in his behalf, unless part of the *res gestae*. Such expressions have, however, been held admissible as declarations of mental condition when made such short time previous as to indicate the state of the defendant's mind at the time of the homicide.

"Generally the defendant's previous efforts to induce a third person to effect a reconciliation between himself and the deceased, or an amicable settlement of their difficulties, are not admissible in his behalf, but this is largely dependent upon the facts of the particular case."

In the case before us the efforts of peace were made several months before the killing occurred, and, in our opinion, are too remote to have any bearing on the mental attitude of the defendant at the time of the killing. Indeed it may have been that when the overtures were re-

jected that the defendant formed the design to kill the deceased. The evidence does not show any effort at reconciliation at or near the time of the killing so as to bring the evidence within the rule contended for by the appellant. It seems from the authorities that a majority of the courts that have passed upon the question hold that it is not admissible at all, being in the nature of a self-serving act or declaration. But the Texas court has declared the doctrine that such evidence is admissible if near enough the time of the difficulty to made it appear a part of the difficulty. We do not hold that cases may not exist where such evidence would be received, but we hold in the present case that the overtures towards peace were too remote from the time of the killing to make it admissible..

It follows from what we have said that the judgment of the lower court will be affirmed.

*Affirmed.*