THOMPSON, J.
 

 The' defendant appeals from a conviction of murder with a qualified verdict and a sentence to life imprisonment.
 

 The three bills of exception relied on by the defendant relate to the refusal of the court to permit certain questions to be asked a witness, of the state on cross-examination, and the rejection of evidence to prove the dangerous and turbulent character of the deceased.
 

 Bill No. 1.
 

 Henry Neagle, a brother of the deceased, being on the stand as a witness for the state, was asked on cross-examination:
 

 “What did he (deceased) go to jail for?” which was objected to by the state as being irrelevant and immaterial, and the objection was sustained.
 

 It appears from the evidence that the killing occurred about 12 o’clock at night at a soft drink stand or place operated by the deceased, George Neagle.
 

 The defendant and his friend, Noonan, had gone to the place about 4 o’clock of that afternoon. After taking several drinks the defendant borrowed some money from, the de; ceased, and he (defendant) and Noonan left the place. While these two were absent it seems that the deceased had a difficulty with a man and two women who were quarreling and fighting in front of his place of business. The deceased struck at the man and missed him, but struck a glass window, breaking through the same and injuring his hand.
 

 He was carried to the hospital to have his hand dressed, and later was carried to the police station under a charge of disturbing the peace.
 

 While he was at the station the defendant and Noonan returned to the soft drink stand about 7:30 o’clock, and defendant asked for George Neagle and was told by Henry Neagle that George had gone to jail for disturbing the peace. Thereupon the defendant, Noon-an, Henry Neagle, and another party went to the police station and brought George Neagle back to his place of business.
 

 The party remained at the place continuously until the killing occurred, which, as before stated, was around 12 o’clock. Prom the time the several parties returned to the place up to the time of the killing much liquor of an intoxicating character was consumed, and many acts of rowdyism and disturbance were committed, in all of which the defendant, Steele, was the instigator and principal actor. He was the only one who was armed, having obtained a pistol from a friend early in the evening before going to the place where the killing occurred.
 

 In the course of the evening Steele fired his pistol either at a clock on the wall or at an electric wire suspended in the line of the pistol’s shot. He also struck an Indian with the butt of his pistol, twice on the back of the head splitting the scalp. He.also drew, his pistol on another Indian and a man by the name of Henserling, and struck a man named Wilhass, at the same time applying to these
 
 *799
 
 parties the vilest of epithets. These various assaults were without the slightest excuse of provocation.
 

 George Neagle, the deceased, was required to report to the night court at 12 o’clock, and as that hour approached he went up to defendant, Steele, and placed his hand on him, saying, “Take me to the night court, let’s go”; and when he did so Steele pulled his pistol and fired two shots. Both shots took effect. One entered Neagle’s back on the left side on a line with the eleventh and between the tenth and eleventh vertebras, passed through a part of the dorsal vertebrae, cutting the spinal cord in two, and lodged on a line underneath the skin with the point of entrance.
 

 The other shot entered the left arm about two inches below the elbow and came out on the front part of the arm about two or three inches below the elbow joint.
 

 The witness, Henry Neagle, as a part of his narrative, had mentioned the fact of George Neagle’s arrest for disturbing the peace earlier in the evening.
 

 The purpose of the question which forms the subject of this bill was to go into the details of the difficulty between George Neagle and the man and two women, and to show that the said Neagle was at fault and was drinking.
 

 The details of this difficulty clearly formed no part of the res gestee, and were totally irrelevant.
 

 That difficulty had no connection whatever with the killing. The defendant at the time was absent, and was not informed of the trouble between the deceased and the other parties until his return to the place several hours after it had taken place.
 

 At the time the question was propounded ¡no evidence whatever had been introduced tending in the remotest degree to show any overt act or hostile demonstration by the deceased toward the defendant, and because of the fact that the evidence at that time disclosed the turbulent conduct of the defendant during the entire evening after his return the second time did not justify the admission of evidence of a prior difficulty of the deceased with third parties and his„ fault in that difficulty, if he was at fault.
 

 Bin No. 3.
 

 This bill was reserved to the refusal of the court to permit the defendant to prove the details of the difficulty referred to in the first bill, one of the participants in that difficulty being Mrs. Charles August, by whom the defendant offered to make the proof.
 

 The avowed purpose of the defendant was to prove the condition of “aggressiveness, behavior, degree of sobriety, belligerency, quarrelsome disposition, the physical menace, and otherwise the demeanor, condition, and attitude of the-said George Neagle” at a time prior to defendant’s return to the saloon.-
 

 The objection was properly sustained for the reasons stated in discussing bill No. 1.
 

 Whether the deceased provoked that difficulty and was at fault could have no possible' connection with or bearing on the difficulty in which he lost his life, and clearly his character as being a turbulent, quarrelsome, and dangerous man could not be established in the manner attempted by proving the details of the antecedent difficulty.
 

 The testimony of the dangerous and quarrelsome 'character of the deceased, even where it is admissible in support of self-defense, must be restricted to the general reputation of the deceased, and all evidence of particular acts of violence on the part of the deceased prior to and disconnected with the difficulty in which he lost his life is inadmissible. State v. Fontenot, 50 La. Ann. 537, 23 So. 634, 69 Am. St. Rep. 455, citing 3 Rice on Evidence, §§ 476, 482.
 

 
 *801
 
 Bill No. 2.
 

 This bill was reserved to the refusal of the court to permit the defendant to prove the general reputation of the deceased for violence and turbulence.
 

 The trial judge states: That a serious consideration of the whole evidence failed to convince him that any overt act or any kind of hostile demonstration of the deceased had been committed towards the defendant or any one else at or before the time of the killing. That only two witnesses, the defendant and a witness named Noonan, were offered to prove an overt act. That he did not believe Noon-an, who appeared to him as a deliberate perjurer. Nor did he believe the defendant. That the physical facts in the ease utterly disproved his testimony.
 

 A careful study of the evidence has convinced us of the correctness of the ruling of the trial judge.
 

 In fact, we do not find any reason on which to base a different conclusion.
 

 The evidence overwhelmingly shows that during the entire evening the conduct of the deceased was of a controlling, conciliating, inoffensive, and peaceful nature as far as such conduct could have been maintained amidst the scenes of rowdyism and disturbance 'which took place in the saloon. The deceased on several occasions appealed ta the defendant to put up his gun and to cut out' and cease his foolish and uncalled fol conduct.
 

 While on the other hand the conduct of the defendant exhibited an utter disregard for human life and human safety.
 

 As stated by the judge, the conduct of the defendant in and about the saloon, in shooting at a clock on the wall, assaulting a number of people in the saloon, both friend and stranger, without in any instance being justified, sometimes with the pistol in his hands and sometimes without, satisfied the judge that the defendant was “fatally bent on mischief.”
 

 The defendant admitted in his evidence that he struck the Indian with his pistol, though he claimed that the Indian advanced on him as if he was going to hit him.
 

 Defendant also admitted that he drew his pistol on Henserling, and his excuse was that Henserling put his hand on the inside of the lapel of his coat as though he was reaching for a gun.
 

 The evidence abundantly shows that the assault on the Indian and on Henserling was altogether, without any reason or justification. Neither of these two parties, nor any one else, during the entire evening gave the defendant any cause to apprehend any danger whatever.'
 

 The testimony of all of the witnesses other than defendant and Noonan, together with the indubitable physical facts, go to show’ beyond any reasonable doubt that Neagle did not strike the defendant as he and Noonan claim, and that neither Neagle nor any one else made any demonstration whatever towards Steele that would justify him in apprehending any danger from any one in the house at the time.
 

 The defendant himself was the aggressor in and instigator of all the disturbances which occurred during the evening spent in the saloon. The killing was entirely unjustifiable and unprovoked, and hence the ruling of the trial judge in refusing evidence of the dangerous character of the deceased was entirely correct.
 

 The rule of jurisprudence which forbids the introduction of evidence to prove the dangerous character of the deceased in a prosecution for a felonious homicide, unless an overt act or some hostile demonstration of the deceased has been first proven, is too
 
 *803
 
 well settled in this state to require special citation of authorities.
 

 The conviction and sentence are affirmed.
 

 O’NIELL, O. X, dissents.