[No. 20912.  In Bank. — January 12, 1893.]

THE PEOPLE, RESPONDENT, *v.* AH LEE DOON, APPELLANT.

97  171
106  36

CRIMINAL LAW — APPEAL — AMENDMENT OF RECORD — UNAUTHENTICATED COPY OF REPORTER'S NOTES — CHARGE TO JURY — BILL OF EXCEPTIONS. — A paper filed in the supreme court as an attempted amendment or addition to the record upon appeal in a criminal action, which consists of what appears to be a certified copy of the long-hand transcript of the official reporter's notes of the trial judge's charge to the jury, filed with the clerk, but never indorsed or authenticated by the judge, is no part of the record, and cannot be used to correct the copy of the charge which is embraced in the bill of exceptions settled and allowed by the judge.

ID. — CORRESPONDENCE RELATING TO DESIGNATION OF JUDGE — CERTIFICATE OF GOVERNOR'S PRIVATE SECRETARY — BILL OF EXCEPTIONS. — A record upon appeal in a criminal action cannot be amended or added to by the filing of a paper consisting of copies, certified by the private secretary of the governor, of certain correspondence between the regular judge of the trial court and the county clerk on the one side, and the governor on the other, relating to the designation of another judge to preside in the place of the regular judge for the trial of the defendant and others, whose prosecution had been commenced by the regular judge while district attorney.  To make them part of the record, they should have been embodied in the bill of exceptions.

ID. — DISQUALIFICATION OF JUDGE — DRAWING PANEL OF TERM JURORS. — A superior judge, in ordering and superintending the drawing of a panel of jurors for a session of the court, does not thereby sit or act in a cause which subsequently comes before the jurors; and his act in drawing the jurors is not void merely because the prosecution of a defendant, whom the judge is disqualified from trying, is to come on for trial before such jurors and another judge.

ID. — CHALLENGE TO PANEL — OBJECTION AFTER VERDICT. — If a panel of jurors drawn for a session of the superior court is incompetent to try a defendant, or the act of the judge in ordering the jurors drawn is void

as to such defendant, the objection should be taken by a challenge to the panel, and cannot be raised for the first time after verdict.

ID. — ACTION BY SUPERIOR JUDGE OF ANOTHER COUNTY — PRESUMPTION OF JURISDICTION. — Where a judge of a superior court of a county other than that in which a defendant is tried presides at the trial of such defendant, and no objection to his authority is raised at the time he receives the defendant's plea, it will be presumed that he is lawfully exercising jurisdiction; and an objection that the order of the governor designating him to preside in such court was not issued until two days after he received the defendant's plea is without merit. It will be presumed in such case that he was presiding at the date of the plea by invitation of the regular judge of the county.

ID. — CONTINUANCE — CUMULATIVE EVIDENCE — DISCRETION. — Although the rule that a trial will not be postponed ordinarily for the purpose of obtaining cumulative evidence is by no means absolute, and has no application to a case in which the only evidence at hand is that of an interested party, especially when he is defendant under an indictment for murder, yet a refusal of the court to grant a continuance, though not sustainable upon the ground that the evidence is cumulative, is not prejudicial error, where there is another ground upon which the ruling may have been made, and which is sufficient to sustain it without an abuse of discretion.

ID. — DEPARTURE OF WITNESS FOR CHINA — INSUFFICIENT SHOWING FOR CONTINUANCE. — It is not an abuse of discretion for a trial judge to refuse to grant a defendant in a criminal prosecution a continuance, asked for upon his affidavit alleging that a material witness, who was a Chinaman, had sailed for China, promising to return, and that he was provided with papers securing him the right to return, where it does not appear that the defendant had direct knowledge of the facts entitling the witness to return and re-enter this country, and he neither stated the facts nor the source of his information, and it appeared that no effort was made to induce the witness to remain, although the defendant was informed of his intended departure, and knew that his trial was impending, and no steps were ever taken to secure his testimony by deposition.

ID. — IMPANELING JURY — VOIR DIRE — LEADING QUESTIONS TO JURORS — DISCRETION. — It is within the sound discretion of the court to allow leading questions to be asked of jurors upon their *voir dire*.

ID. — MURDER — INFORMATION — PREVIOUS CONVICTION — PARDON — WITHDRAWAL OF CHARGE BY CONSENT OF DEFENDANT. — Where an information against a defendant for murder contained a charge of prior conviction of murder, and alleged that it had not been reversed, annulled, or set aside, but it appeared by the evidence that the offense had been pardoned, and the only thing done by the court in regard to it was to permit the prosecution, with the consent of the defendant, to withdraw that part of the charge, no error of the court is shown.

ID. — EVIDENCE — GOOD DISPOSITION OF DEFENDANT — CROSS-EXAMINATION. — Evidence of the good disposition of a defendant charged with murder, other than evidence of his good reputation, may be properly excluded, but when it is received without objection, it is proper, upon the cross-examination of witnesses testifying to the good disposition of the defend-

ant, to ask them if they had heard of his prior conviction of murder, and of his having drawn his pistol on different persons.

ID. — CHALLENGE TO JURORS — IMPLIED BIAS — CONSTITUTIONAL LAW. — The law taking away the challenge to a juror for implied bias, on the ground that the juror has formed or expressed an unqualified opinion as to the guilt of the accused, is constitutional.

APPEAL from a judgment of the Superior Court of Marin County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Charles B. Darwin,* and *Edgar B. Haymond,* for Appellant.

*Attorney-General W. H. H. Hart, Deputy Attorney-General William H. Layson, J. W. Cochrane,* and *J. N. E. Wilson,* for Respondent.

BEATTY, C. J. — The defendant, on the second day of December, 1890, shot and killed William N. Shenton, at the town of San Rafael, in Marin County.   On the 29th of December, 1890, F. M. Angellotti, then district attorney of said county, filed in the superior court an information charging the defendant with the crime of murder, and also charging him with a prior conviction of murder in the first degree, which it was alleged had never been reversed, annulled, or set aside.  On the same day, the defendant was arraigned before E. B. Mahon, then judge of the superior court of Marin, and was given time to plead until January 5, 1891.  On that day, F. M. Angellotti, who, as district attorney, had taken the dying declaration of Shenton, conducted the preliminary examination of defendant, and filed the information against him, having succeeded E. B. Mahon as judge of the superior court, and being disqualified to sit or act in the case (Code Civ. Proc., sec. 170, subd. 3), extended the defendant's time to plead until January 10th, at which time D. J. Murphy, one of the judges of the superior court of San Francisco, being present and presiding, the defendant appeared with his counsel and entered his plea of not guilty.  The case was there-

upon set for trial on the 19th of January, but was sub-
sequently continued until February 2d, at which date the
trial commenced before Judge Murphy. Between the
date of defendant's plea and the commencement of his
trial, one or more orders continuing the cause from day
to day were made by Judge Angellotti. On January 10th,
the date of defendant's plea, Judge Angellotti made an
order directing the clerk to draw fifty jurors and the
sheriff to summon them for January 19th, the day for
which defendant's trial was set. Judge Angellotti pre-
sided at the drawing of said fifty jurors, and from the
panel so obtained, the jury which tried the defendant
was selected, no challenge or objection to the panel hav-
ing been at any time interposed by or on behalf of the
defendant.

When the cause was called for trial on February 2d,
the defendant moved for a continuance, on the ground
of the absence of a material witness. His motion was
overruled, and the trial proceeded, resulting in his
conviction of murder in the first degree and sentence
of death. Before sentence he moved for a new trial,
which was denied, from which order and the judgment
he prosecutes this appeal.

The errors assigned in support of the appeal are nu-
merous, and only partly indicated by the foregoing state-
ment, which, however, is sufficient to exhibit the case
in its general outlines. Other material facts will be
stated in connection with the points to which they more
particularly relate.

It is proper at the outset to say that the attempted
amendments or additions to the record, filed by the peo-
ple and by the defendant respectively, must be wholly
disregarded. The paper filed by the attorney-general
on the part of the people consists of a copy of the judge's
charge to the jury, certified by the county clerk, which,
it is said, differs materially from that contained in the
printed record. But the copy contained in the printed
record, or one of them (for it appears in two places), is
embraced in the bill of exceptions settled and allowed

by the judge who presided at the trial, while the copy certified by the clerk seems to be a long-hand transcript of the official reporter's notes of the charge filed with the clerk, but never indorsed or authenticated by the judge. Such a document is no part of the record (*People* v. *January,* 77 Cal. 179), and cannot, of course, be used to correct the bill of exceptions which is a part of the record. The paper filed by the defendant consists of copies, certified by the private secretary of the governor, of certain correspondence between Judge Angellotti and the clerk of Marin County on one side, and the governor on the other, relating to the designation of Judge Murphy to preside in the superior court of Marin County for the trial of defendant and others whose prosecution for criminal offenses had been commenced by Judge Angellotti while district attorney. The facts shown by this proposed amendment appear to be wholly immaterial, but if they were otherwise, they could not be considered. To make them part of the record, they should have been embodied in the bill of exceptions.

Looking, then, exclusively to the duly certified record of the case contained in the printed transcript, I proceed to consider the matters assigned as error.

1. It is contended that Judge Angellotti, being disqualified to sit or act in the case, had no power or jurisdiction to order the drawing of the panel of jurors for the session of the court at which the defendant was to be tried, and especially that he was incompetent to preside at the drawing of such jurors.

Section 170 of the Code of Civil Procedure reads as follows:—

"Sec. 170. No justice, judge, or justice of the peace shall sit or act as such in any action or proceeding,— 1. To which he is a party, or in which he is interested; 2. When he is related to either party by consanguinity or affinity within the third degree, computed according to the rules of law; 3. When he has been attorney or counsel for either party in the action or proceeding. But the provisions of this section shall not apply to

the arrangement of the calendar, or the regulation of the order of business, nor to the power of transferring the action or proceeding to some other court."

It is perfectly clear from the terms of this section, without reference to the numerous cases in which its provisions have been applied and enforced, that Judge Angellotti was disqualified by the third subdivision from sitting or acting in this cause, except for the purpose of making the merely formal orders enumerated in the last clause of the section, and it is well settled that so far as he may have done so, his acts were void. The question therefore is, whether, in ordering and superintending the drawing of the panel of jurors, he did sit or act in this cause. It does not appear that the jury was drawn specially for this case, and presumably it was the regular jury for the ensuing term or session of the court which it is made the duty of the presiding judge to have drawn and summoned. (Code Civ. Proc., sec. 214.) To draw such jury was not a proceeding in this cause or in any cause, and could not possibly have been a void act merely because this cause, and possibly others in which Judge Angellotti was disqualified, was coming on for trial. The fault, if fault there was, consisted in selecting the jury which tried this cause from the panel so drawn. But if the jurors drawn and summoned in pursuance of Judge Angellotti's order were incompetent to try this cause, the objection should have been taken by a challenge to the panel, and if, for the purposes of this cause, the act of the judge in ordering the jurors drawn was void, as counsel contend, then certainly the statute (Pen. Code, sec. 1059) is broad enough to have given the defendant good ground of challenge to the panel. And that was the regular and only way to raise the objection. If it had been made at that time, and sustained, a special *venire* could at once have been issued. Raised for the first time after verdict, it comes too late.

2. It is objected that Judge Murphy had no authority to act in the cause on January 10th, when he received the

defendant's plea. It is certainly true that the order of
the governor, issued on January 12th, conferred no au-
thority to act on the 10th. But Judge Murphy may
have been, and probably was, presiding on the 10th by
invitation of Judge Angellotti. Such invitation would
have conferred the requisite authority. (Const., art.
VI., sec. 8; Code Civ. Proc., sec. 71.) No question as
to Judge Murphy's authority was raised at the time of
entering the plea, and it must be presumed that he was
lawfully exercising jurisdiction. (Code Civ. Proc., sec.
1963, subds. 14–16.)

3. It is claimed that the court erred in denying de-
fendant's application for a postponement of the trial.

The evidence adduced at the trial showed that while
Shenton was driving slowly along the street defendant
approached him from behind and fired several shots at
him. The first shot missed; the second took effect, the
bullet striking Shenton in the back, inflicting a mortal
wound and bringing him helpless to the ground. A third
and fourth shot were fired after Shenton fell, but whether
directed at him or not is perhaps not clear. It was, at
all events, however, highly material to the defense to
show what provocation led to the shooting. According
to the testimony of the defendant, he had been wantonly
assaulted, beaten, and kicked by Shenton a few minutes
before the shooting. According to the dying declaration
of Shenton, a quarrel had taken place, in which blows
had been exchanged, but the quarrel was provoked by
the abusive, insulting, and aggressive conduct of the
defendant. The only witness present when this quarrel
took place was a Chinaman named Lee Ching. The
affidavit filed by defendant in support of his motion for
a continuance showed that Lee Ching would testify to
the same version of this quarrel and assault that the
defendant gave. It is not denied that his evidence
would have been material, but the attorney-general
contends that as it would have been merely cumulative
to that of the defendant, the absence of the witness was
not a ground for a continuance. It is true that a trial

will not be postponed ordinarily for the purpose of obtaining cumulative evidence, but this rule, which is by no means absolute, has no application to a case in which the only evidence at hand is that of an interested party, especially when he is defendant under an indictment for murder. The ruling of the court against a continuance cannot be sustained on the ground that the evidence was cumulative. But there was another ground upon which the ruling may have been made, and which is sufficient to sustain it. According to the defendant's affidavit, Lee Ching had sailed for China on December 6th, promising to return in September or October following, and provided with papers which secured him the right to return. But upon this point — the right of Lee Ching to return and re-enter the United States — it was clear that the defendant could have no direct knowledge of the facts, and he neither stated the facts, nor the sources or means of his information. The court may well have found that there was no probability that Lee Ching would ever return within its jurisdiction. No effort appeared to have been made to induce him to remain, although the defendant was informed of his intended departure, and knew that his trial was impending, and no steps were ever taken to secure his testimony by deposition. Under the circumstances, the court may have been satisfied that his testimony was not really desired, and that his absence was used as a pretext for delay. In passing upon the motion for a new trial the court was probably influenced with respect to this matter and largely justified by the fact that Shenton's dying declaration was directly opposed to the defendant's testimony, not only as to the circumstances of the shooting, but as to the previous quarrel and assault, and that several disinterested witnesses of the shooting fully corroborated the dying statement, and as clearly contradicted the defendant's testimony. The fact that the defendant was proved to have given an untruthful account of the shooting and the circumstances attending it, while the dying declaration was

corroborated in those particulars by a number of disinterested witnesses, may have satisfied the judge that the defendant had no real desire to call a disinterested witness of the preceding quarrel. At all events, we cannot say that the refusal of the continuance was, in view of all the circumstances, an abuse of discretion.

4. Two jurors were challenged for actual bias, one because he had formed and expressed an opinion that the defendant was guilty, — an opinion based upon newspaper reports and common rumor, — the other, apparently because he had a low opinion of the value of Chinese testimony. In the course of the examination of these jurors upon their *voir dire*, a number of questions were asked them by counsel for the prosecution and by the court, which were objected to as leading.

The questions certainly were leading, but such a course of examination is in the discretion of the court, and we cannot see that it was abused in this instance.

5. The information contained a charge of prior conviction of murder, and alleged that it had not been reversed, annulled, or set aside. It is contended that this was error, but how it was error is not stated, and does not occur to us. It was an error on the part of the district attorney to allege that the conviction was in force, for it appeared by the evidence at the trial that the offense had been pardoned, but the court committed no error in any ruling concerning this matter. The only thing done by the court was to permit the prosecution, with the consent of the defendant, to withdraw that part of the charge.

6. It would not have been error if the court had excluded evidence of the good disposition of the defendant, other than evidence of his good reputation; but, as matter of fact, the record shows that the objection of the prosecution to this evidence was withdrawn, and it was thereupon admitted.

7. On cross-examination of the witnesses who testified to the good disposition of the defendant, the court permitted them to be asked if they had heard of his

prior conviction of murder and of his having drawn his pistol on different persons. In the cross-examination of witnesses testifying to reputation or character, such questions are permissible.

8. The charge of the court was very long, and a large number of special instructions were asked by the defendant, many of which were refused. It is contended that the court erred in refusing each one of eleven different instructions asked by the defendant, and that many parts of the charge of the court were erroneous. After a careful examination of the charge and the instructions refused, I find that the instructions refused are all embraced in the charge, and I find no error in the charge of which the defendant can complain. If it is erroneous at all, it is in stating the law more favorably to the defendant on one or two points than he had a right to ask.

9. In addition to the foregoing points, counsel for defendant have called in question the constitutionality of the law taking away the challenge for implied bias, on the ground that the juror has formed or expressed an unqualified opinion as to the guilt of the accused. Their contention is, that one of the essential constituents of the right of trial by jury secured by the constitution is the right of a person accused of a crime to be tried by jurors who have never formed or expressed an unqualified opinion of his guilt, whether founded on newspaper reports or common rumor, or upon grounds more reliable. After carefully considering the argument of counsel and the cases cited, I am satisfied that the weight of authority is against their contention, and that there is nothing to warrant us in pronouncing unconstitutional a statute which has been in unquestioned operation nearly eighteen years.

The judgment and order of the superior court are affirmed.

DE HAVEN, J., McFARLAND, J., PATERSON, J., HARRISON, J., and GAROUTTE, J., concurred.