[Civ. No. 33549.   Second Dist., Div. Four.   Feb. 11, 1969.]

ROGER P. NOORTHOEK, Petitioner, v. THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY, Respondent; LORRAINE E. NOORTHOEK, Real Party in Interest.

Caryl Warner for Petitioner.

James W. Powell, District Attorney, and Norman A. Sherr, Deputy District Attorney, for Respondent.

Davis & Wendt and Robert D. Wendt for Real Party in Interest.

FILES, P. J.—This proceeding was brought to review orders of the superior court to the following effect: (1) adjudging petitioner in contempt for failure to obey a subpena duces tecum; (2) adjudging petitioner in contempt for failure to pay alimony and child support as required by a divorce decree; and (3) modifying the provisions of the divorce decree concerning visitation of minor children and awarding additional attorney fees and costs. This court issued its order to show cause with respect to the contempt orders only, for the reason that a contempt judgment is not appealable, but is reviewable on certiorari. (*Weber* v. *Superior Court* (1945) 26 Cal.2d 144, 148 [156 P.2d 923].) The order modifying the divorce decree involves entirely different issues and is appealable under Code of Civil Procedure section 963,

subdivision 2 (now § 904.1, subd. (b)) ; hence there is no need for review of it by extraordinary writ.

A short outline of the background will be sufficient to expose the legal issues. The parties will be referred to as they appeared in the superior court.

An interlocutory decree awarding defendant (real party in interest) a divorce from plaintiff (petitioner here) was entered April 22, 1966. During the succeeding two years there was a continuing controversy over the children and the collection of the alimony and child support, resulting in a series of court proceedings. Plaintiff is a member of the bar and appeared without an attorney. Early in the proceedings plaintiff filed an affidavit under Code of Civil Procedure section 170.6 disqualifying Judge O'Reilly. The divorce was granted after a trial before Judge Harris, who was the only other superior court judge in the county. On June 13, 1967, while a motion to modify the decree was pending, a minute order was made in these words: ''Hon. Richard F. Harris does now disqualify himself, and orders the above matter to be heard by a judge to be assigned by the Judicial Council.'' The motion which was then pending was heard by Judge Smith, who was assigned from Santa Barbara County. After that, plaintiff filed a ''declaration of disqualification'' against Judge Smith.

On May 28, 1968, Judge Harris signed an order, under Code of Civil Procedure section 714, requiring plaintiff, as a judgment debtor, to appear on June 10, 1968, for examination under oath concerning his property. Concurrently the clerk issued, pursuant to defendant's application, a subpena duces tecum requiring plaintiff to attend a session of court on June 10 and bring with him specified financial records. The subpena and order were served upon plaintiff personally, according to the return made by the sheriff. On June 10 the proceedings were continued to June 24, then to June 25 by court orders.

Meanwhile on June 5 plaintiff had filed a motion to quash the subpena and the order for his examination, upon the ground, among others, that Judge Harris was disqualified and that his order was void.

On June 19 defendant applied for and obtained from Judge David (a retired judge sitting by assignment) (1) an order to show cause in re modification of child custody, and (2) an order to show cause why plaintiff should not be held in contempt. The latter order was supported by a declaration alleging that plaintiff had wilfully failed to pay child support and

alimony as required by the divorce judgment. Both orders to show cause were set for hearing on June 25. The orders to show cause were served by delivery to the secretary in plaintiff's law office, which was the address plaintiff had given on his own papers in conformity with rule 201(c)(1), California Rules of Court.

On June 25 plaintiff was not in court, but defendant was present with counsel. Judge David was presiding under an assignment by the Chairman of the Judicial Council. Before the case was called, the court received a telephone message from plaintiff that he desired to submit his motion to quash upon the papers on file. A hearing was then held, after which the court denied the motion to quash and continued other matters to the following day.

On June 26 also plaintiff was absent. A hearing was held and testimony was taken, after which the court found plaintiff in contempt for disobeying the subpena. Other matters were put over to June 28.

On June 28, plaintiff again being absent, further testimony was taken, after which the court made its order modifying the divorce decree and also announced findings and a decision that plaintiff was in contempt for failure to pay support money.

Plaintiff was ordered imprisoned two days on the subpena contempt and five days on the support contempt and thereafter until he purged himself of the contempts. A signed order, containing findings, was filed July 1 and a memorandum reciting the court's reasons in more detail was filed July 8.

### Disobedience of the Subpena

The subpena was issued to require the production of papers at a hearing to be conducted pursuant to Code of Civil Procedure section 714 which provides: "When an execution against property of the judgment debtor, or of any one of several debtors in the same judgment, may properly be issued, whether or not such execution has been issued or returned, the judgment creditor is entitled to an order from a judge of the court, requiring such judgment debtor to appear and answer concerning his property before such judge, or a referee appointed by him, at a time and place specified in the order."

The order directing such an examination was signed by Judge Harris, who had disqualified himself the previous year. Defendant's counsel argues that Judge Harris was not disqualified, pointing out that there is no record of

any statement showing any factual basis of disqualification. Judge David, sitting in the trial court, adopted the view that Judge Harris had done no more than express his consent that this proceeding might be heard by a judge from out of the county. The record, cryptic as it is, will not support that interpretation.

Code of Civil Procedure section 170 lists the grounds of disqualification and then provides: "Whenever a judge or justice shall have knowledge of any fact or facts, which, under the provisions of this section, disqualify him to sit or act as such in any action or proceeding pending before him, it shall be his duty to declare the same in open court and cause a memorandum thereof to be entered in the minutes or docket."

The minute order of June 13, 1967, must be taken to reflect Judge Harris' compliance with that statutory mandate. If he knew he was disqualified, it was "his duty to declare the same" even though no party had challenged him. It is preferable that the disqualified judge record the facts showing the ground of disqualification, so that the parties may know whether or not the ground is one which can be waived. But we cannot say that this lack of particularity in the minute entry robs it of legal force. The entry of June 13, 1967, declaring "Hon. Richard F. Harris does now disqualify himself" must be taken at face value, as regularly made, truly reflecting a proper decision made by the judge in accordance with the applicable statute, which is section 170.

This brings us to the question whether a disqualified judge may make an order for the examination of a judgment debtor under section 714. Section 170 says "No justice or judge shall sit or act as such in any action or proceeding" in which he is disqualified. Section 714 specifically provides for "an order from a judge."

Reading the sections literally, the person who signs the order is performing an act which can only be done by a judge, and thus is acting "as such" within the prohibition of section 170.

The broad language of section 170 stands in contrast to the more limited terms of Code of Civil Procedure section 170.6, which provides for a peremptory disqualification upon a short form of affidavit. Section 170.6 provides "No judge . . . shall try any civil or criminal action or special proceeding of any kind or character nor hear any matter therein which involves a contested issue of law or fact. . . ." after he has been

challenged in accordance with the procedure authorized by that section. In *Thompson* v. *Superior Court* (1962) 206 Cal. App.2d 702 [23 Cal.Rptr. 841] it was decided that the act of a judge in signing an order to show cause was not subject to challenge under section 170.6, because the prohibition of that section was limited to trials and hearings. That decision supplies no authority for the acts of a judge who is disqualified under section 170.

The original form of section 170 included the statement that "the provisions of this section shall not apply to the arrangement of the calendar or to the regulation of the order of business. . . ." While that language was in the law, the Supreme Court held, in *Petition of Los Angeles Trust Co.* (1910) 158 Cal. 603 [112 P. 56], that a disqualified judge had power to sign an order required by Code of Civil Procedure section 1277 setting the time of hearing of a proceeding for change of name. The opinion points out (at p. 607) that no discretion is given to the court in making the order, and that "Such action on the part of a judge may well be held to be action relating solely to the arrangement of the calendar and regulation of the order of business." The statutory language referred to there was removed from section 170 in 1927. Hence the decision offers no assistance in interpreting the present statute.

In *People* v. *Ah Lee Doon* (1893) 97 Cal. 171 [31 P. 933] the court refused to reverse a judgment upon the ground that a disqualified judge had ordered and supervised the drawing of a panel of 50 jurors, from which the trial jury had later been drawn. The Supreme Court relied upon a literal reading of the statute, pointing out that the panel had not been drawn specially for that case, and hence the disqualified judge did not sit or act in the "action or proceeding."

In a number of situations where an act of a disqualified judge could have had little or no effect upon the merits of the case, courts have declared the act void, despite the hardship which resulted from the gap which was thereby created in the proceeding.

In *Johnson* v. *German American Ins. Co.* (1907) 150 Cal. 336 [88 P. 985] the time to serve appellant's bill of exceptions had been extended by an order made by a disqualified judge. The Supreme Court held that the order was void, the time was not extended, the bill of exceptions was therefore untimely, and the alleged errors set forth therein could not be reviewed on appeal.

In *Morrissey* v. *Gray* (1911) 160 Cal. 390 [117 P. 438] a disqualified judge made an order allowing the sheriff to amend his return to show that he had served a defendant "as administratrix" rather than as an individual. The Supreme Court said (at p. 397) that this order was void, but the defect was cured by later proceedings before another judge.

In *Giometti* v. *Etienne* (1934) 219 Cal. 687 [28 P.2d 913] the Supreme Court granted a hearing after decision by the Court of Appeal, and then discovered that one of the four justices who had signed the order was disqualified. The court declared that its order granting a hearing was void and, in the absence of a valid and timely order, the petition for hearing had been lost irretrievably by the lapse of time.

In *People* v. *Ebey* (1907) 6 Cal.App. 769 [93 P. 379] the defendant was arraigned before a disqualified judge. When defendant refused to plead, the judge ordered the clerk to enter a not guilty plea and set the case for trial. The trial was held before a different judge. The Court of Appeal reversed the conviction upon two grounds, one of which was that the disqualified judge should not have presided at the arraignment for plea. Upon application for hearing in the Supreme Court, that court filed a memorandum withholding its approval of part of the opinion, but approving the reversal upon the sole ground that the disqualified judge had presided at the arraignment and ordered the entry of the plea. (6 Cal.App. at p. 774.)

In the case at bench, it is arguable that a judge ordering a hearing under Code of Civil Procedure section 714 exercises little or no discretion. The only showing required of the applicant is that he is entitled to a writ of execution, a matter that the clerk can readily determine and does routinely determine by inspecting the file when a judgment creditor requests issuance of a writ under Code of Civil Procedure section 682. The language of section 714 states no ground upon which the judge could refuse the request of a creditor who had not previously obtained such an order. This leaves to the judge only the responsibility of designating the time and place of the examination and the officer before whom it is to take place. Nevertheless the Legislature has seen fit to provide that the examination provided for in section 714 can be held only after an order made by a judge. In view of the broad prohibition of section 170, and the strictness with which it has always been applied, we must conclude that a disqualified judge cannot order the examination of a judgment debtor.

Since under the authorities cited above the order of the dis qualified judge is void, there was no pending proceeding for which plaintiff could have been subpenaed to appear and bring records on June 10, 1968, the date specified in the subpena. The record shows plaintiff did in fact appear on that date, and he had on file his written objection upon the ground that the order had been signed by a disqualified judge. Judge Harris, who was on the bench June 10, continued the matter to June 24 so that another judge could hear it. Instead of continuing the hearing the court should have set aside its prior order and recalled the subpena. Plaintiff's failure to appear thereafter is not punishable as a contempt.

Since the order adjudging plaintiff in contempt for failure to respond to the subpena must be annulled upon the ground stated above, it is unnecessary to discuss other points raised by plaintiff in his attack upon the proceedings which followed.

### Failure to Pay Alimony And Child Support

It is plaintiff's contention that the court had no jurisdiction to hear the support money contempt charge because he was not personally served with the order to show cause. Plaintiff does not deny that he actually received the papers, which were delivered to his secretary in his law office on June 20, 1968, together with an order shortening time for a hearing set for June 25. It is unnecessary to decide whether under the circumstances that service was sufficient, because plaintiff waived any defect in service by making a written appearance to challenge the qualifications of Judge David on June 25.

These are the circumstances: The examination of plaintiff under section 714, plaintiff's motion to quash the subpena and the order for his appearance, the order to show cause re modification of the judgment, and the order to show cause re contempt were all on the calendar for 9:30 a.m., June 25. Prior to the call of the calendar plaintiff telephoned Judge David and said he was in Los Angeles and would not be in court that day and that he desired to submit his motion to quash upon the papers on file.

In open court the motion to quash was considered and denied. Other matters were ordered continued to 1:30 p.m. on June 26.

. On June 25 there was filed in the office of the county clerk a document bearing the caption of the divorce case and entitled "Objection to judge on grounds of disqualification (CCP 170)."

The text was as follows:

"Now Comes the Plaintiff and Cross Defendant and objects to the hearing of the above entitled cause by the Honorable Leon T. David, Judge of said Court, and for grounds of objections alleges: That said Judge is prejudiced against the Plaintiff and Cross Defendant in that he has denied him his constitutional rights in order to force him to come to Court so that other and more appropriate forms of action may be used. Furthermore, he has taken into evidence the fact that the Defendant is here in California. However, her attorney can handle a C.C.P. 714 examination without her, and this is no reason to deny the Plaintiff's motion to quash. Furthermore, Plaintiff will not receive a fair and impartial hearing before said Judge.

/s/ Roger Noorthoek

Roger P. Noorthoek

In pro per"

This document was verified by a declaration "Executed at San Luis Obispo, California on June 25, 1968."

This challenge to the qualification of Judge David was noted by the judge when he commenced the hearing on June 26. An order was then made striking it upon the ground that it failed to state any facts which would disqualify the judge. There is no question as to the appropriateness of that order.

Although there is no direct evidence of the hour when the "Objection to judge" was filed on June 25, the circumstances compel the conclusion that it was filed after the morning session. Prior to the morning session plaintiff was in Los Angeles and by telephone requested Judge David to rule on the motion to quash in his absence. The "Objection to judge" was executed in San Luis Obispo, and appears to be citing the court's ruling made that forenoon as a ground of disqualification. The "Objection to judge" can only be construed as a motion to disqualify Judge David from hearing the two orders to show cause which were then pending for hearing on the following day. Such a motion constitutes a general appearance and obviates any question of the court's jurisdiction of the person in the pending contempt matter. (*Donovan* v. *Superior Court* (1952) 39 Cal.2d 848 [250 P.2d 246]; 1 Witkin, Cal. Procedure (1954) Jurisdiction, § 75, p. 345.)

Defendant's affidavit charging contempt was on a printed form similar to that which was approved in *In re Hinman* (1966) 239 Cal.App.2d 845, 850 [49 Cal.Rptr. 162]. It sets forth the rate of payment required by the interlocutory

decree, the period over which payments accrued, the amount accrued, the amount paid on account, and the balance due. The court heard testimony and made findings that the amount due was $1,300 for alimony and $2,700 for child support, as charged; and that plaintiff "had and still has the financial ability to pay said total amount in contempt and each item thereof as ordered but that the said plaintiff has wilfully failed and refused and continues to wilfully fail and refuse the same."

This finding, based as it is upon a proper charging affidavit and evidence, is free of the defects which were found in *Warner* v. *Superior Court* (1954) 126 Cal.App.2d 821 [273 P.2d 89].

As to plaintiff's ability to pay, the court was entitled to consider the fact that two years earlier the parties had stipulated and the court had decreed that $100 per month for alimony and $200 per month for child support were amounts within plaintiff's ability to pay. It was also established that plaintiff was then and had been a member of the bar in active practice. In the absence of any contrary evidence the court could reasonably find that the accrual of $4,000 in arrearages over a two-year period indicated a contumacious refusal to obey the judgment of the court. (See Code Civ. Proc., § 1209.5; *Sorell* v. *Superior Court* (1967) 248 Cal.App.2d 157 [56 Cal.Rptr. 222].)

The record thus supports the contempt order insofar as it punishes plaintiff for his past violation. But the court went farther than that. The judgment of contempt directs that plaintiff be confined in the county jail for five days and thereafter until he shall pay the defendant the sum of $4,000 as the past due arrearages.

Code of Civil Procedure section 1218 fixes five days as the maximum imprisonment upon a single contempt.

Section 1219 provides "When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he have performed it, . . ."

In order to support an indefinite commitment under section 1219, there must be a finding, based upon evidence, that the contemner has the present ability. (See *In re Bronstein* (1964) 225 Cal.App.2d 136 [37 Cal.Rptr. 133].) Proof that plaintiff had the ability to pay reasonable support, month by month, is not proof that plaintiff now is able to pay a lump sum of $4,000. (See *Sorell* v. *Superior Court, supra,* 248 Cal.

App.2d at p. 161, fn. 2.) The record contains no evidence that plaintiff now has $4,000 or that he has resources from which that sum can be produced at this time. To the extent that the contempt judgment imposes a civil commitment under section 1219, it lacks evidentiary support.

The order adjudging plaintiff in contempt for violation of the subpena duces tecum is annulled. The order adjudging plaintiff in contempt for failure to pay alimony and child support and sentencing him to five days' imprisonment in the county jail is affirmed, but the portion of the order which commits plaintiff thereafter is annulled. Insofar as the petition relates to the order modifying the divorce judgment, it is dismissed.

Jefferson, J., and Wapner, J. pro tem.,* concurred.

A petition for a rehearing was denied March 4, 1969.

---

*Assigned by the Chairman of the Judicial Council.